Docket No. 104441.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

---

LARRY W. PORTER, JR., Appellant, v. DECATUR MEMORIAL HOSPITAL *et al.* (Decatur Memorial Hospital, Appellee).

*Opinion filed January 25, 2008.*

CHIEF JUSTICE THOMAS delivered the judgment of the court, with opinion.

Justices Freeman, Fitzgerald, Kilbride, Garman, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

This appeal arises from a medical malpractice action filed in Macon County by plaintiff, Larry W. Porter, Jr. The primary issue for our review is whether count III of a second amended complaint, filed after the applicable statute of limitations expired, relates back to the timely filed previous complaints under section 2–616(b) of the Code of Civil Procedure (the Code) (735 ILCS 5/2–616(b) (West 2004)), so that the count is not time-barred. Under section 2–616(b), the key inquiry is whether the cause of action asserted in the newly filed pleading "grew out of the same transaction or occurrence" set up in the pleadings that were filed within the limitations period. 735 ILCS 5/2–616(b) (West 2004).

## BACKGROUND

Plaintiff was involved in an automobile accident on January 12, 2001, at around 8 a.m. He suffered a spinal cord injury during the accident and was brought to the emergency room of Decatur Memorial Hospital (the Hospital) at about 8:30 a.m. that day. To monitor his neurological function, various tests and procedures were performed on plaintiff at the Hospital from the time he arrived until he was operated upon by Dr. Marie Long at 10 p.m. on January 13, 2001.

Plaintiff filed his original complaint on March 25, 2002. Count I of that complaint named Dr. Oliver Dold as a defendant and the Hospital as a respondent in discovery. Plaintiff alleged that Dr. Dold saw plaintiff in the Hospital emergency room around 11:30 a.m. on January 12, 2001. Dr. Dold diagnosed plaintiff as having an incomplete spinal cord injury and ordered him to be admitted to the intensive care unit. Dr. Dold further ordered that once the patient was stable from a pulmonary perspective and could be placed in the MRI scanner, an MRI scan should be done to determine whether any direct surgical intervention to the spine was necessary.

The original complaint further alleged that upon plaintiff's admission to the intensive care unit, Dr. Dold ordered that plaintiff's C collar and spine board be discontinued. Within three hours of ordering discontinuance of the C collar and spine board, plaintiff lost blood pressure and left leg function, which are symptoms of further spinal injury. Around 3 p.m. on January 12, 2001, Dr. Carol Cohen, a pulmonologist, ordered that plaintiff could undergo an MRI when Dr. Dold "wishes." At 4 p.m on that same date, Dr. Dold ordered that an "MRI scan T spine" be conducted "either today or tomorrow."

The original complaint alleged that Dr. Dold was negligent in one or more of the following ways: (1) ordered a discontinuance of the plaintiff's C collar and spine board prior to the performance of the MRI; (2) discontinued spinal immobilization prior to fully appreciating the patient's spinal injury; (3) failed to obtain a timely MRI scan on January 12, 2001; and (4) failed to appreciate decreasing blood pressure and leg function as signs and symptoms of further spinal injury. As a direct result of these wrongful acts or omissions, the complaint continued, plaintiff suffered further spinal injury with loss of function in his legs.

Count II of the original complaint named the Hospital as a respondent in discovery, stating that plaintiff believed that the Hospital had essential information about additional defendants that should be named in the action.

Thereafter, the parties continued to conduct discovery in the case. Plaintiff took the deposition of Dr. Marie Long on September 9, 2002. Relevant to the issue presented in this case is her testimony with respect to a CT scan of plaintiff's cervical spine taken on January 12, 2001, and read and interpreted by Dr. Gordon Cross, a radiologist. Dr. Long stated that she looked at this CT scan on January 13, 2001, and that while she noticed that there was "a fracture to C5" she did not think that it was significant. She further stated that in her opinion the fracture shown on the CT scan did not explain the neurological deficits that she herself noted in the patient on the morning of January 13, 2001. Finally, she noted that a CT scan will not reliably reveal an injury to a disk. The proper procedure to diagnose a disc injury is an MRI.

On January 6, 2003, plaintiff filed a first amended complaint, repeating the allegations against Dr. Dold, but now naming the Hospital as a defendant. The first amended complaint alleged that, as a result of the wrongful acts and omissions of the Hospital, plaintiff's diminishing neurological function went undiagnosed and untreated, causing him to lose extremity function. Specifically, plaintiff alleged that around noon on January 12, 2001, Dr. Dold ordered neurological checks for plaintiff every hour and that those checks were to be performed by Hospital personnel. Plaintiff further alleged that the Hospital, through its employees and agents, breached its duty of care by failing to (1) perform thorough neurological checks every hour as ordered by Dr. Dold, (2) record complete spinal assessments as part of hourly neurological checks, (3) record extremity strength as part of hourly neurological checks on January 13, 2001, from 1 a.m. to 6 a.m., and (4) report diminishing neurological status to the attending neurosurgeon.

On June 21, 2004, plaintiff filed a motion for leave to file a second amended complaint. The amendment sought to add a new allegation to count I against Dr. Dold, alleging that he failed to recognize a fracture of the cervical spine on the CT scan performed on January 12, 2001.

The proposed second amended complaint also added a third count, which was directed against the Hospital. The third count alleged that plaintiff underwent a CT scan of the cervical spine on January 12, 2001, which was read and interpreted by Dr. Gordon Cross, a radiologist. Plaintiff asserted that Dr. Cross was an apparent agent of the Hospital. Plaintiff further alleged that the Hospital, through its agents and employees, breached its duty of care by one or more of the following acts or omissions: (1) failed to properly interpret the CT of plaintiff's cervical spine; (2) failed to appreciate cervical fractures revealed on that CT of the cervical spine; and (3) misread and misinterpreted the CT of the cervical spine. Finally, plaintiff alleged that as a result of these wrongful acts and omissions, his diminishing neurological function went undiagnosed and untreated, causing plaintiff to lose extremity function.

Plaintiff attached to his motion for leave to amend a Hospital radiology report of the January 12, 2001, CT scan, along with the discovery deposition of Dr. Leon Sykes, Jr., taken on January 21, 2004. The radiology report indicates that Dr. Cross read the CT scan of plaintiff's spine and found no fractures. Dr. Sykes, an associate professor of surgery at the Chicago Medical School, stated in his deposition that there are two fractures shown on plaintiff's CT scan that are "very evident." He further stated that the fractures unequivocally show that this patient had a cervical spine injury. According to Dr. Sykes, the fact that fractures were missed in the reading of the CT scan affected the entire management of the patient. If the CT scan had been read properly, it should have meant that the C collar should not have been removed and that an MRI should have been done early on to see where the spinal cord injury was occurring.

The Hospital objected to the motion for leave to amend, arguing that the claim against it based on the negligence of Dr. Cross was a new and different claim and therefore barred by the two-year statute of limitations set forth in section 13–212 of the Code (735 ILCS 5/13–212 (West 2004)). In response, plaintiff argued that count III of the second amended complaint met the requirements of section 2–616(b) of the Code to avoid the statute of limitations because the claim against the Hospital, based on the negligence of Dr. Cross, arose out of the same treatment as alleged in the original and first amended complaints. Plaintiff explained that the previous complaints put the

-4-

Hospital on notice that he was asserting negligent treatment by the employees and agents of the Hospital in failing to appreciate and report diminishing neurological status. Count III of the second amended complaint, he maintained, merely sought to further identify the conduct of the Hospital in its failure to appreciate his diminishing neurological status by its agent's failure to interpret the CT scan.

The trial court allowed the motion to amend on August 10, 2004, and the second amended complaint was filed as of that date. On August 27, 2004, however, the Hospital filed a motion to dismiss count III of the second amended complaint pursuant to section 2–619 of the Code (735 ILCS 5/2–619 (West 2004)), again arguing that it was barred by the statute of limitations and that it did not relate back under section 2–616(b).

Following a hearing, the trial court this time decided that the allegations contained in count III did not relate back to the original counts plaintiff filed against the Hospital. The trial court found that the Hospital was not apprised of facts concerning the alleged medical malpractice of Dr. Cross before the running of the statute of limitations, neither by the allegations of the previous complaints nor by the depositions and exhibits. The court believed that the original, alleged liability of the Hospital was centered exclusively around the conduct of its nurses' failure to conduct neurological checks and not the radiologist's negligent interpretation of the CT scan. The court noted that its previous identification of the "same transaction or occurrence" as the entire hospitalization of the patient was too broad for purposes of the relation-back doctrine. The trial court granted the motion to dismiss count III with prejudice.

Plaintiff filed a motion to reconsider. On January 11, 2005, the trial court denied the motion, but also decided that its earlier ruling to grant leave to file count III of the second amended complaint was inconsistent with its later ruling to grant the section 2–619 motion to dismiss. The court then proceeded to reconsider, *sua sponte*, its initial ruling on plaintiff's motion for leave to file the second amended complaint. It then revised that earlier ruling to deny leave to amend.

Plaintiff appealed both the October 29, 2004, ruling granting the section 2–619 dismissal and the January 11, 2005, ruling denying his motion to reconsider. A divided appellate court affirmed the judgment of the circuit court. 372 Ill. App. 3d 310. The majority pointed out

that there were no references in any of plaintiff's previous complaints to Dr. Cross or to the CT scan. Nor was there anything in the deposition of Dr. Long to indicate a possible claim about the CT scan. The majority therefore concluded that the trial court did not abuse its discretion in ruling that the Hospital's "attention was not directed, within the relevant statutory time period, to the facts that formed the basis of the claim against it in plaintiff's second amended complaint." 372 Ill. App. 3d at 319-20. According to the majority, plaintiff's defining of "same transaction or occurrence" as the entire course of events from the time he was admitted into the hospital was too broad. 372 Ill. App. 3d at 319.

Justice Myerscough dissented, stating that the Hospital knew when the first amended complaint was filed that plaintiff breached its duty of care to plaintiff during the initial 36 hours prior to surgery. Thus, the second amended complaint relates back, as it grew out of the same transaction or occurrence, *i.e.*, the negligent care of plaintiff's injury in the first 36 hours of hospitalization. 372 Ill. App. 3d at 325 (Myerscough, J., dissenting). The dissenting justice believed that reading the statute to mean that each individual act of medical care–*e.g.*, reading X-rays, taking temperatures, performing neurological checks–constituted a separate transaction or occurrence was entirely too narrow an interpretation of the relation-back doctrine. 372 Ill. App. 3d at 325 (Myerscough, J., dissenting).

We allowed plaintiff's petition for leave to appeal. 210 Ill. 2d R. 315.

ANALYSIS

We initially note that an assertion that a claim is barred by the statute of limitations is a matter properly raised by a section 2–619 motion to dismiss. 735 ILCS 5/2–619(a)(5) (West 2004). A section 2–619 motion admits as true all well-pleaded facts, along with all reasonable inferences that can be gleaned from those facts. *Calloway v. Kinkelaar*, 168 Ill. 2d 312, 325 (1995). Furthermore, when ruling on a section 2–619 motion to dismiss, a court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party. *DeSmet v. County of Rock Island*, 219 Ill. 2d 497, 504 (2006). It is well settled that our review of a section 2–619

dismissal is *de novo*. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006); *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367-68 (2003); *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 86 (1996) (applied *de novo* standard of review to trial court's section 2–619 dismissal of a claim on the basis of statute of limitations and the failure of the new claim to relate back under section 2–616(b)).

Here, the appellate court majority applied an abuse of discretion standard of review, apparently believing that because the trial court revised its earlier ruling that had granted leave to amend to be consistent with its later ruling to grant the section 2–619 dismissal, it was not actually reviewing a section 2–619 dismissal, but was instead reviewing a routine denial of a motion for leave to amend. The circumstances of the present case, however, indicate that the only question considered by the trial court with respect to either ruling was whether the new claim in count III of the second amended complaint related back under section 2–616(b) so as to avoid the affirmative matter of the bar of the statute of limitations. In this situation, we believe that the appropriate standard of review is *de novo*.

The parties agree that count III of plaintiff's third amended complaint is barred by the two-year statute of limitations of section 13–212 of the Code unless the claim "relates back" to the date of filing of any of the timely filed previous complaints. Section 2–616(b) governs the relation-back doctrine and provides in relevant part as follows:

> "The cause of action, cross claim or defense set up in any amended pleading shall not be barred by lapse of time under any statute or contract prescribing or limiting the time within which an action may be brought or right asserted, if the time prescribed or limited had not expired when the original pleading was filed, and if it shall appear from the original and amended pleadings that the cause of action asserted, or the defense or cross claim interposed in the amended pleading *grew out of the same transaction or occurrence* set up in the original pleading, even though the original pleading was defective in that it failed to allege the performance of some act or the existence of some fact or some other matter which is a necessary condition precedent to the right of recovery or defense asserted, if the condition precedent has in fact been

performed, and for the purpose of preserving the cause of action, cross claim or defense set up in the amended pleading, and for that purpose only, an amendment to any pleading shall be held to relate back to the date of the filing of the original pleading so amended." (Emphasis added.) 735 ILCS 5/2–616(b) (West 2004).

Plaintiff argues that the phrase "same transaction or occurrence" means the same event or series of connected events, occurring proximately to each other in time and space. He maintains that the "transaction or occurrence" in this case was the treatment he received for his back injury in the Hospital from the time of his admission on the morning of January 12, 2001, until the discectomy surgery performed by Dr. Long on the evening of January 13, 2001. The basis for the appellate court's decision, he notes, was its rule that " '[t]he original complaint should supply a defendant with all of the information necessary to prepare its defense to the subsequently asserted claim.' " 372 Ill. App. 3d at 315, quoting *McArthur v. St. Mary's Hospital of Decatur*, 307 Ill. App. 3d 329, 334 (1999). Plaintiff contends that the appellate court essentially interpreted this requirement to mean that all of the relevant facts must have been pleaded in a complaint filed prior to the expiration of the statute of limitations. But plaintiff points out that a requirement that all the relevant facts must have appeared in a prior, timely-filed pleading is nowhere found in section 2–616(b). Instead, the statute prefaces the "same transaction and occurrence" language with another key phrase, "grew out of," which means that the new allegations need not be based on the same specific facts of the prior allegations.

The Hospital in response argues that count III of the second amended complaint essentially seeks to add a new party with new claims against that party. Despite the differing results in the cases interpreting section 2–616(b), the statute has one guiding element, which is notice to the defendant. The facts alleged in the original complaint must put a defendant on notice of the matter covered by the amendment. The Hospital contends that there was no notice from the prior pleadings or from anything in the record on appeal that would indicate that the Hospital should have been on notice that plaintiff might eventually seek to amend his complaint to assert a claim against the Hospital based on Dr. Cross' reading of the CT scan. According

to the Hospital, plaintiff is simply selecting an arbitrary time interval of a hospital stay and claiming that this is a transaction or occurrence.

The purpose of the relation-back doctrine of section 2–616(b) is to preserve causes of action against loss by reason of technical default unrelated to the merits. *Bryson*, 174 Ill. 2d at 106-07; *Boatmen's National Bank of Belleville v. Direct Lines, Inc.*, 167 Ill. 2d 88, 102 (1995). Courts should therefore liberally construe the requirements of section 2–616(b) to allow resolution of litigation on the merits and to avoid elevating questions of form over substance. *Bryson*, 174 Ill. 2d at 106; *Boatmen's National Bank*, 167 Ill. 2d at 102. Additionally, both the statute of limitations and section 2–616(b) are designed to afford a defendant a fair opportunity to investigate the circumstances upon which liability is based while the facts are accessible. *Boatmen's National Bank*, 167 Ill. 2d at 102. Thus, it has been stated that the rationale behind the "same transaction or occurrence" rule is that a defendant is not prejudiced if " 'his attention was directed, within the time prescribed or limited, to the facts that form the basis of the claim asserted against him.' " *Boatmen's National Bank*, 167 Ill. 2d at 102, quoting *Simmons v. Hendricks*, 32 Ill. 2d 489, 495 (1965). A court should consider the entire record, including depositions and exhibits, to determine whether the defendant had such notice. *Wolf v. Meister-Neiberg, Inc.*, 143 Ill. 2d 44, 46 (1991).

When this court construes a statute, that construction is considered a part of the statute itself unless and until the legislature amends it contrary to this court's interpretation. *Miller v. Lockett*, 98 Ill. 2d 478, 483 (1983). The parties cite a number of decisions of this court that have construed section 2–616(b). None of these decisions are particularly close factually to the case now before us. *Zeh v. Wheeler*, 111 Ill. 2d 266 (1986), however, contains the most comprehensive discussion of the "same transaction and occurrence" language of section 2–616(b), and we find its analysis instructive. There, the plaintiff brought a slip-and-fall action against defendant for failure to maintain a common stairway of an apartment that the defendant owned. The plaintiff attempted to amend his complaint to allege a different location of the accident, which was an address that was two blocks away from the address named in the original complaint.

In considering whether the amendment related back for purposes of section 2–616(b), *Zeh* traced the historical development of the relation-back doctrine. The doctrine first came into existence in statutory form in 1929. That statute provided for a relation back if the cause of action grew out of the same transaction or occurrence *and was substantially the same* as that set up in the original pleading. *Zeh*, 111 Ill. 2d at 272. In 1933, the statute was amended to omit the words "and is substantially the same as" so that amendments could be made if the matter introduced by the amended pleading "grew out of the same transaction or occurrence set up in the original pleading." *Zeh*, 111 Ill. 2d at 272; Ill. Rev. Stat. 1939, ch. 110, par. 46(2). The 1933 amendment thus shifted from the common law requirement that the amended pleading set up the same cause of action as the original pleading to a test of identity of transaction or occurrence. *Zeh*, 111 Ill. 2d at 272-73. The legislative change was based on the rationale that " 'a defendant has not been prejudiced so long as his attention was directed, within the time prescribed or limited, to the facts that form the basis of the claim asserted against him.' " *Zeh*, 111 Ill. 2d at 273, quoting *Simmons*, 32 Ill. 2d at 495. The court further noted that the shift in focus from the identity of the cause of action to the identity in the occurrence or transaction under the current practice act is "bottomed on the belief that if the defendant has been made aware of the occurrence or transaction which is the basis for the claim, he can prepare to meet plaintiff's claim, whatever theory it may be based on." *Zeh*, 111 Ill. 2d at 279.

*Zeh* then looked to Rule 15(c) of the Federal Rules of Civil Procedure (Fed. R. Civ. P. 15(c)) for guidance. Federal Rule 15(c) is similar to section 2–616(b) and provides that the filing of an amended complaint relates back to the filing of the original complaint if the claim asserted in the amended complaint arose out of the same "conduct, transaction or occurrence" set forth in the original pleading. *Zeh*, 111 Ill. 2d at 279; Fed. R. Civ. P. 15(c). *Zeh* noted that under Federal Rule 15(c), it is generally held that among the factors to consider in determining whether the amended complaint relates back to the filing of the original complaint are whether the defendant received adequate notice of the claim against him and whether the defendant would be unfairly prejudiced if the amendment were

allowed to relate back to the date of the filing of the original complaint. *Zeh*, 111 Ill. 2d at 280.

*Zeh* also discussed the United States Supreme Court's decision in *Tiller v. Atlantic Coast Line R.R. Co.*, 323 U.S. 574, 89 L. Ed. 465, 65 S. Ct. 421 (1945), which found that an amendment to a complaint filed beyond the limitations period related back to the original complaint where the conduct in the amendment related to the same general transaction and occurrence described in the original complaint. *Zeh* quoted with approval *Tiller*'s observation that " '[t]here is no reason to apply a statute of limitations when, as here, the respondent has had notice from the beginning that petitioner was trying to enforce a claim against it because of the events leading up to the death of the deceased in the respondent's yard.' " *Zeh*, 111 Ill. 2d at 280, quoting *Tiller*, 323 U.S. at 581, 89 L. Ed. at 472, 65 S. Ct. at 424-25.

*Zeh* concluded its analysis by holding:

> "[Because] the facts alleged in the original complaint failed to put the defendants on notice of the matter covered by the amendment, the defendants could properly claim surprise that the plaintiff was seeking to recover damages for injuries occurring at an entirely different building. To allow the amended complaint to relate back under the circumstances would be to disregard the purpose of a statute of limitations which is 'to afford a defendant a fair opportunity to investigate the circumstances upon which liability against him is predicated while the facts are accessible.' " *Zeh*, 111 Ill. 2d at 282-83, quoting *Geneva Construction Co. v. Martin Transfer & Storage Co.*, 4 Ill. 2d 273, 289-90 (1954).

*Zeh* recognized that Illinois courts are liberal in allowing amendments to the pleadings after the running of the limitations period and that the Code reflects the modern approach to pleading of resolving litigation on the merits and the avoidance of elevating questions of form over questions of substance. *Zeh*, 111 Ill. 2d at 278. But *Zeh* in essence concluded that these concerns do not trump considerations of whether a defendant was given adequate notice and knowledge of the incident giving rise to the lawsuit. *Zeh*, 111 Ill. 2d at 278-79.

-11-

We find it significant that this court in *Zeh* looked to federal law for guidance. While federal law is, of course, only persuasive authority on the issue before us, the language employed in both our state and federal statutes is very similar, and there is some interest in having a uniform body of precedent where many cases involving a diversity of citizenship could be brought in either state or federal court.

Under both Illinois and federal law, there is no question that relation back is appropriate where a party seeks to add a new legal theory to a set of previously alleged facts. *In re Olympia Brewing Co. Securities Litigation*, 612 F. Supp. 1370, 1371-72 (N.D. Ill. 1985); see also *Bryson*, 174 Ill. 2d at 108 (relation back is not prohibited merely based on the fact that the name of the cause of action or the legal theory used to support the claim for damages is changed in the amended pleading). It is also clear that an amendment which states an entirely new and distinct claim for relief based on completely different facts will not relate back. *Simmons*, 32 Ill. 2d at 497 (a plaintiff cannot be allowed to slip in an entirely distinct claim in violation of the limitations act); *Olympia Brewing Co.*, 612 F. Supp. at 1372, citing 3 J. Moore, *Moore's Federal Practice*, ¶15.15[2], at 15–196 (1985 & Supp. 1985). Between these two clear principles, however, is a grey area where courts have allowed relation back when amendments have added new factual allegations that can be characterized as falling within the general "transaction" alleged in the original complaint. See *Olympia Brewing Co.*, 612 F. Supp. at 1372. The court in *Olympic Brewing Co.* noted that an amendment is considered distinct from the original pleading and will not relate back where (1) the original and amended set of facts are separated by a significant lapse of time, or (2) the two sets of facts are different in character, as for example when one alleges a slander and the other alleges a physical assault, or (3) the two sets of facts lead to arguably different injuries. *Olympia Brewing Co.*, 612 F. Supp. at 1372. But new factual additions will be considered to relate back where there is a "sufficiently close relationship" between the original and new claims, both in temporal proximity and in the general character of the sets of factual allegations and where the facts are all part of the events leading up to the originally alleged injury. *Olympia Brewing Co.*, 612 F. Supp. at 1372-73.

An example of a case that satisfies this close-relationship standard is the Supreme Court's decision in *Tiller*. There, the plaintiff's husband was killed when he was struck by a train while working for the defendant railroad in its railroad yard. Plaintiff's original complaint alleged that the railroad failed to keep a proper lookout for the decedent, to warn him of the approaching train, to keep the head railroad car properly lighted, and to warn him of the sudden change in shifting cars. The amended complaint added an allegation based on the violation of a federal statute that required locomotives to have a *rear* light. The Court found that both the original and amended claims "related to the same general conduct, transaction and occurrence which involved the death of the deceased." *Tiller*, 323 U.S. at 581, 89 L. Ed. at 471-72, 65 S. Ct. at 424. As noted above in our discussion of *Zeh*, *Tiller* found that there was no reason to apply a statute of limitations where the defendant was on notice of the events leading up to the death of the deceased. *Tiller*, 323 U.S. at 581, 89 L. Ed. at 472, 65 S. Ct. at 424-25.

We adopt the sufficiently-close-relationship test as set forth in *Olympia Brewing Co.* to determine whether the new allegations of count III of the second amended pleading grew out of the transaction or occurrence set up in the earlier pleadings, and to determine whether the Hospital can be considered to have had adequate notice. Under that test, a new claim will be considered to have arisen out of the same transaction or occurrence and will relate back if the new allegations as compared with the timely filed allegations show that the events alleged were close in time and subject matter and led to the same injury. *Olympia Brewing Co.*, 612 F. Supp. at 1373.[1]

---

[1]In adopting the federal court's test in *Olympia Brewing Co.*, we acknowledge that Illinois is a fact-pleading jurisdiction, while federal courts represent a notice-pleading jurisdiction. The difference is not important to our analysis, however, because section 2–616(b) and Federal Rule 15(c) have similar "transaction and occurrence" language. It is this language that is at issue in this case, not whether the pleadings set forth enough factual specificity to avoid a motion to dismiss. Moreover, we note that the *Olympia Brewing Co.* court did have a detailed factual proffer before it, just as it if was a fact-pleading jurisdiction, because the court ordered plaintiff to set forth more factual detail so that the court would be better equipped to

Applying that test, we note that plaintiff's timely filed first amended complaint alleged that the Hospital provided personnel, including nurses, aides, attendants *and others* for the care and treatment of patients, including plaintiff. One of the allegations of negligence in that complaint was that the Hospital, through its employees and agents, failed to report diminishing neurological status to the attending neurosurgeon. The complaint further alleged that as a direct result of this wrongful act, plaintiff's diminishing neurological function went undiagnosed and untreated, causing plaintiff to lose extremity function. Count III of the second amended complaint added allegations that essentially alleged that an agent of the Hospital, Dr. Cross, misread and misinterpreted the CT scan of plaintiff's spine and that, as a result, plaintiff's diminishing neurological function went undiagnosed and untreated, causing plaintiff to lose extremity function.

We find that there is a sufficiently close relationship between the two allegations to show that the later allegation grew out of the same transaction or occurrence set up in the earlier one. The two allegations were part of the same events leading up to the same ultimate injury for which damages are sought. They were closely connected in both time and location. They were also similar in character and general subject matter, as they involved allegations of medical malpractice that resulted in failure to appreciate plaintiff's diminishing neurological status. Furthermore, the Hospital was on notice from the earlier allegation that plaintiff was asserting negligent treatment by the employees and agents of the Hospital in failing to appreciate and report diminishing neurological status. We believe that the Hospital should have been aware that this would include any procedure or test–including a CT scan–performed by agents or employees of the Hospital that might have impacted their ability to appreciate and report on plaintiff's diminishing neurological status in the critical hours of January 12, 2001, leading up to plaintiff's surgery the next day.

The Hospital's argument that it had no notice that plaintiff intended to rely on the CT scan because neither plaintiff's original nor his first amended complaint mentioned a CT scan is not persuasive. It

---

determine whether the newly alleged claim related back. See *Olympia Brewing Co.*, 612 F. Supp. at 1371, 1375.

takes too narrow a view of the "same transaction or occurrence" language. Furthermore, it seems to us that the Hospital's argument ignores the "grew out of" language of section 2–616(b), as well as the additional proviso that relation back may be appropriate "even though the original pleading *** failed to allege the performance of some act or the existence of some fact." 735 ILCS 5/2–616(b) (West 2004). Section 2–616(b) itself was largely designed to notify a party that claims will be asserted that grow out of the general fact situation set forth in the original pleading. See *Olympia Brewing Co.*, 612 F. Supp. at 1371 ("Commentators and courts agree that Rule 15(c) was largely designed to notify a party that claims will be asserted that arise out of the 'general fact situation set forth in the original pleading' "). Here, the allegations of the first amended complaint, particularly the general allegation about the failure to report plaintiff's diminishing neurological function, supplied the appropriate notice.

Our analysis is supported by *Huntoon v. Pritchard*, 371 Ill. 36 (1939), a case not cited by the parties, but one which does share some commonality with the case before us, even though it was decided under the statute in effect prior to the 1933 amendment, which dropped the "substantially the same" cause-of-action requirement. In *Huntoon*, the plaintiff's original complaint alleged that the defendant physician treated the plaintiff for a period of 21 days for a "certain sickness and malady." The original complaint further alleged that as a result of the defendant's negligent treatment, the plaintiff's sickness and malady became greatly increased and aggravated. After the applicable statute of limitations expired, the plaintiff filed an amendment to her pleading striking "a certain sickness and malady" and inserting in lieu thereof the words "a certain spinal injury which consisted of one or more crushed vertebrae." *Huntoon*, 371 Ill. at 39. The plaintiff also added allegations that the defendant negligently (1) failed to diagnose the plaintiff's condition and injury; (2) failed to properly perform an operation on the plaintiff's spine; (3) and failed to reset her vertebrae so as to permit the plaintiff's spine and injured vertebrae to heal.

*Huntoon* found that the amendment related back to the original pleading. *Huntoon*, 371 Ill. at 43. The court stated that "[t]he facts alleged in the amended declaration were simply a more particular statement of the facts alleged in the original declaration, and it is quite

-15-

apparent that they arose out of the same occurrence, although as first alleged they may have been too general." *Huntoon*, 371 Ill. at 43.

Similar to *Huntoon*, we find that the allegation in plaintiff's second amended complaint about Dr. Cross' reading of the CT scan was an amplification that grew out of the earlier allegation about failing to report diminishing neurological function, both of which arose out of the same transaction or occurrence. Thus, we find that the Hospital had sufficient notice of the new allegations and was not prejudiced thereby.

Finally, we note that there are a host of appellate court decisions that have considered the "same transaction or occurrence" language in the context of medical malpractice claims. See, *e.g.*, *Frigo v. Silver Cross Hospital & Medical Center*, 377 Ill. App. 3d 43 (2007); *Grove v. Carle Foundation Hospital*, 364 Ill. App. 3d 412 (2006); *Castro v. Bellucci*, 338 Ill. App. 3d 386 (2003); *McCorry v. Gooneratne*, 332 Ill. App. 3d 935 (2002); *Avakian v. Chulengarian*, 328 Ill. App. 3d 147 (2002); *McArthur v. St. Mary's Hospital of Decatur*, 307 Ill. App. 3d 329 (1999); *Cammon v. West Suburban Hospital Medical Center*, 301 Ill. App. 3d 939 (1998); *Figueroa v. Illinois Masonic Medical Center*, 288 Ill. App. 3d 921, (1997); *Steinberg v. Dunseth*, 276 Ill. App. 3d 1038 (1995); *Flynn v. Szwed*, 224 Ill. App. 3d 107 (1991); *Bailey v. Petroff*, 170 Ill. App. 3d 791 (1988); *Weidner v. Carle Foundation Hospital*, 159 Ill. App. 3d 710 (1987). A close examination of these cases shows that various panels of our appellate court have divided over how broadly or narrowly to interpret section 2–616(b)'s relation-back provision. We see no need, however, to undertake an in-depth analysis of each of these cases. Our decision today should provide adequate guidance for future cases.

## CONCLUSION

For the foregoing reasons, we reverse the judgments of the appellate and circuit courts. We remand the cause to the circuit of Macon County for further proceedings consistent with this opinion.

*Judgments reversed;*
*cause remanded.*