2023 IL App (1st) 220694-U

No. 1-22-0694

Order filed September 20, 2023

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| COMPREHENSIVE MARKETING, INC., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 L 14379 |
| | ) | |
| HUCK BOUMA P.C., and MARK BISHOP, | ) | Honorable |
| | ) | Margaret Ann Brennan, and |
| Defendants-Appellees. | ) | Mary Colleen Roberts, |
| | ) | Judges, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Presiding Justice Reyes and Justice D.B. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Where plaintiff filed a legal malpractice action beyond the six-year statute of repose, plaintiff's allegations regarding former counsel's concealment of plaintiff's legal malpractice cause of action and plaintiff's reasonable reliance on former counsel's misrepresentations were sufficient to meet the pleading requirements for fraudulent concealment and equitable estoppel and thereby toll the statute of repose.

¶ 2     Plaintiff Comprehensive Marketing, Inc. sued its former counsel, defendants Huck Bouma P.C., and Mark Bishop, for legal malpractice and breach of contract. The circuit court dismissed the complaint with prejudice as barred by the six-year statute of repose.

¶ 3     On appeal, plaintiff argues that (1) the 2019 complaint was filed within the repose period from defendants' last act of representation in 2017, (2) defendants' fraudulent concealment tolled the statute of repose, (3) defendants were equitably estopped from raising the statute of repose because their actions and inactions caused plaintiff to believe no action was necessary, and (4) the court abused its discretion by depriving plaintiff of an opportunity to amend its complaint.

¶ 4     For the reasons that follow, we reverse the judgment of the circuit court.[1]

¶ 5                                    I. BACKGROUND

¶ 6     According to the pleadings, plaintiff alleged that defendants provided legal advice on opt-out notice requirements under the Telephone Consumer Protection Act of 1991 (TCPA) (47 U.S.C. § 227 (2018)) for years prior to and including 2010. "Prior to, including and after 2010," defendants drafted for plaintiff, provided to plaintiff, and advised plaintiff to use opt-out language for TCPA mandated opt-out notices. Plaintiff used the opt-out notice language vetted by defendants in the promotional faxes plaintiff sent from 2010 or before, and for years afterward. Defendants represented to plaintiff that they had expertise concerning the TCPA and compliance with it, and plaintiff relied on defendants' advice and counsel concerning TCPA compliance.

¶ 7     In 2010, an attorney representing a recipient of plaintiff's promotional faxes made a claim against plaintiff (the 2010 claim), alleging that plaintiff's TCPA opt-out notice was statutorily

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

insufficient. Defendants directly responded to the alleging attorney on plaintiff's behalf and advised plaintiff to defend and not settle the 2010 claim, asserting that the opt-out notice was legally compliant. In February 2010, defendants advised plaintiff to delay responding to the 2010 claim by "letting it go for a while" and "do[ing] nothing and see[ing] what happens." Defendants represented to plaintiff that they had extensive expertise in defending TCPA claims, and plaintiff relied on that representation. When the alleging attorney dropped the 2010 claim, defendants represented to plaintiff that the claim was dropped as a result of the written defense advanced by defendants that the opt-out notice was legally sufficient. Plaintiff alleged, however, that defendants knew the opt-out language was not statutorily compliant and made those representations regarding the 2010 claim with the intent to conceal from plaintiff and prevent plaintiff from discovering that defendants had drafted and counseled the use of a non-compliant opt-out notice.

¶ 8 Following the 2010 claim, defendants did not advise plaintiff to modify the opt-out notice, and plaintiff continued to use it. Plaintiff maintained a continual attorney-client relationship with defendants, who provided annual correspondence with plaintiff on statutory representation services and overall review of compliance issues. However, this correspondence omitted any mention that defendants had drafted and advised plaintiff to use statutorily noncompliant opt-out language. Plaintiff alleged defendants knowingly omitted that information with the intent to conceal their drafting and use of noncompliant language. Plaintiff relied on defendants' legal counsel and continued using the deficient opt-out notice.

¶ 9 On May 5, 2017, a fax recipient notified plaintiff that its opt-out notice was legally deficient. Plaintiff relayed this complaint to defendants, who allegedly continued to conceal from plaintiff defendants' knowledge that the opt-out notice failed to comply with the TCPA. On May

17, 2017, plaintiff was sued in two federal court class action lawsuits over the alleged opt-out notice violations (the 2017 lawsuits). Plaintiff alleged that defendants were served with the 2017 lawsuits and attended court hearings for those lawsuits on plaintiff's behalf. However, defendants assert they did not appear for plaintiff in any of the federal cases. Plaintiff hired separate counsel for the 2017 class action litigation. Plaintiff continued to rely on defendants' ongoing counsel concerning the TCPA requirements for promotional faxes. Plaintiff alleged that defendants continued to conceal the deficiency of the opt-out notice, continued to provide legal services to plaintiff through at least August 29, 2018, and continued to charge plaintiff fees through at least November 17, 2017.

¶ 10    According to the record, defendants sent a May 22, 2017 letter to plaintiff,[2] which responded to plaintiff's request for a review of the opt-out notice requirements under the TCPA and "recommend[ed] that [plaintiff] replace its current facsimile opt-out clause with the paragraph [included in the letter, which met] all of the [opt-out notice] requirements."

¶ 11    On June 8, 2018, plaintiff's counsel Richard Spellmire sent defendants a letter regarding plaintiff's claims against defendants. The letter referred to the pending 2017 lawsuits and proposed a tolling agreement and mediation. In October 2019, plaintiff entered the first settlement agreement of the 2017 lawsuits.

¶ 12    On December 31, 2019, plaintiff filed the complaint against defendants at issue here, alleging legal malpractice, fraudulent concealment and equitable estoppel relating to defendants' legal counsel regarding TCPA compliance.

---

[2] Plaintiff's pleadings also referenced a June 2, 2017 letter from defendants, which addressed the federal law regulating commercial emails, but that issue is not relevant to this appeal.

¶ 13 Defendants moved to dismiss the complaint under section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2018)) as barred by both the statutes of limitation and repose. In April 2021, plaintiff filed a first amended complaint, adding a breach of contract claim and several additional allegations. Defendants filed an amended motion to dismiss.

¶ 14 Defendants' amended motion to dismiss argued that plaintiff's complaint was barred by the statutes of limitations and repose. Regarding repose, defendants argued that the alleged malpractice in this case—defendants' legal advice to plaintiff regarding TCPA opt-out notices—occurred in 2010 and plaintiff did not file its complaint until December 2019, which was outside the six-year statute of repose. Defendants also argued that plaintiff's fraudulent concealment and equitable estoppel claims were fatally deficient because the basis of the legal malpractice action improperly constituted the grounds for equitable estoppel—*i.e.*, plaintiff was improperly relying on a claim that the legal advice was the fraudulent concealment and misrepresentation. Defendants also contended that plaintiff had no factual support for its conclusory allegations, which merely mimicked the requisite elements for fraudulent concealment and equitable estoppel. Specifically, defendants asserted that (1) plaintiff's allegations merely showed that defendants believed the TCPA legal advice they provided to plaintiff was accurate and sufficient, (2) no nonconclusory allegations suggested that defendants or anyone else believed the advice was not true at the time defendants provided it in 2010, (3) the allegations did not establish that defendants intended to deceive plaintiff by any statements or actions, and (4) plaintiff cited no factual evidence showing that defendants concealed or misstated any facts at all.

¶ 15    In response, plaintiff argued, *inter alia*, that its lawsuit was timely filed and the statute of repose was tolled when defendants, who owed plaintiff a fiduciary duty, fraudulently concealed their actions.

¶ 16    In September 2021, the circuit court granted defendants' motion to dismiss, finding that the amended complaint was barred by both the two-year limitations and six-year repose periods. Plaintiff moved for reconsideration and clarification, asking the court to reinstate the matter and allow oral argument. Plaintiff also asked for further relief including granting plaintiff leave to amend the complaint further if deemed necessary and setting the matter for an appropriate discovery schedule.

¶ 17    In April 2022, the court granted reconsideration on the statute of limitations issue, finding that there was a question of fact as to when plaintiff's cause of action accrued. However, the court affirmed dismissal of the lawsuit as barred by the statute of repose. Specifically, the court found that the statute of repose began to run in 2010 when defendants allegedly improperly drafted and began using the opt-out notice that gave rise to the claims against plaintiff. The court concluded that plaintiff could not commence its 2019 legal action for improper legal advice more than six years after the 2010 date on which the act or omission occurred. The court did not address plaintiff's arguments regarding tolling the statute of repose based on the fraudulent concealment statute or equitable estoppel doctrine.

¶ 18    Plaintiff timely appealed.

¶ 19                                  II. ANALYSIS

¶ 20    A section 2-619 motion to dismiss admits the legal sufficiency of a complaint but asserts an affirmative matter that defeats the claim. *Doe A. v. Diocese of Dallas*, 234 Ill. 2d 393, 396

(2009). Section 2-619(a)(5), in particular, allows for the involuntary dismissal of an action that "was not commenced within the time limited by law." 735 ILCS 5/2-619(a)(5) (West 2018). A section 2-619 motion affords a means of disposing of issues of law or of easily proved facts at the outset of a case. *Torcasso v. Standard Outdoor Sales, Inc.*, 157 Ill. 2d 484, 486 (1992). If the judge determines that the plaintiff cannot plead a cause of action under the apparent facts and circumstances of the case, the judge may dismiss the pleading with prejudice. *People ex rel. Daley v. Datacom Systems Corp.*, 146 Ill. 2d 1, 5 (1991). When proceeding under a 2-619 motion, the movant concedes all well-pleaded facts set forth in the complaint along with reasonable inferences that can be gleaned from those facts, but does not admit conclusions of law. *Piser v. State Farm Mutual Automobile Insurance Co.*, 405 Ill. App. 3d 341, 344, 346 (2010). The motion should be granted only if the plaintiff can prove no set of facts that would support a cause of action. *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 277-78 (2003). When ruling on a section 2-619 motion to dismiss, a court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party. *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 352 (2008). This court reviews *de novo* a section 2-619 order of dismissal. *Id.*

¶ 21                                    A. Statute of Repose

¶ 22    First, we address plaintiff's argument that its lawsuit was filed within the six-year statute of repose.

¶ 23    Section 13-214.3 of the Code sets forth the limitations and repose periods applicable to actions for legal malpractice. It states, in relevant part, as follows:

    "(b) An action for damages based on tort, contract, or otherwise (i) against an attorney arising out of an act or omission in the performance of professional services ***

must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought.

(c) Except as provided in subsection (d), an action described in subsection (b) may not be commenced in any event more than 6 years after the date on which the act or omission occurred." 735 ILCS 5/13-214.3(b), (c) (West 2018).

¶ 24    The statute of limitations set forth in section 13-214.3(b) incorporates the "discovery rule," which serves to toll the limitations period to the time when the plaintiff knows or reasonably should know of his or her injury. *Hester v. Diaz*, 346 Ill. App. 3d 550, 553 (2004). The purpose of a statute of repose like the one found in section 13-214.3(c) operates to curtail the "long tail" of liability that may result from the discovery rule. *Sorenson v. Law Offices of Theodore Poehlmann*, 327 Ill. App. 3d 706, 708 (2002). A statute of repose begins to run when a specific event occurs, regardless of whether an action has accrued. *Ferguson v. McKenzie*, 202 Ill. 2d 304, 311 (2001). Thus, a statute of repose is not tied to the existence of any injury, but rather it extinguishes liability after a fixed period of time. *Id.*

¶ 25    Plaintiff argues that the statute of repose did not begin to run until 2017, the last date on which defendants performed the last acts of representation upon which the malpractice is founded, when defendants reiterated their prior incorrect legal advice on the TCPA opt-out notice and concealed the erroneousness of their prior advice on the topic. Specifically, based upon plaintiff's 2017 inquiry, defendants sent plaintiff a letter dated May 22, 2017, which failed to advise plaintiff of the prior incorrect advice and potential liability stemming therefrom. Plaintiff argues that if it had known in May 2017 of defendants' negligent counseling occurring over the preceding years,

then plaintiff could have taken action to eliminate or mitigate the damages that were forthcoming from the 2017 lawsuits.

¶ 26    Defendants respond that plaintiff's entire action is predicated on defendants' 2010 advice that the opt-out notice it supplied to plaintiff complied with the TCPA notice requirements, and all of plaintiff's claimed damages flow from that alleged initial malpractice. Accordingly, the date of that initial malpractice marks the beginning of the period of repose.

¶ 27    We agree with defendants. The statute of repose in a legal malpractice case begins to run as soon as an event giving rise to the malpractice claim occurs, regardless of whether plaintiff's injury has yet been realized. *Mauer v. Rubin*, 401 Ill. App. 3d 630, 639 (2010). Illinois courts have consistently held that the statute of repose is not tolled merely by the continuation of the attorney-client relationship. *Id.* at 640; *Hester*, 346 Ill. App. 3d 550; *Serafin v. Seith*, 284 Ill. App. 3d 577 (1996). Rather, " 'where there is a single overt act from which subsequent damages may flow, the statute [of repose] begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury, and this is so despite the continuing nature of the injury.' " *Mauer*, 401 Ill. App. 3d at 642 (quoting *Feltmeier*, 207 Ill. 2d at 279). Moreover, the period of repose is not tolled by the attorney's ongoing duty to correct past mistakes. *Fricka v. Bauer*, 309 Ill. App. 3d 82, 84 (1999).

¶ 28    Because plaintiff's action is premised upon defendants' failure to properly advise plaintiff in 2010, that is when the statute of repose began to run, notwithstanding defendants' alleged later failure to correct that omission. Thus, plaintiff's suit, filed nine years after that alleged initial malpractice, is well beyond the six-year period of repose. 735 ILCS 5/13-214.3(c) (West 2018).

¶ 29                                    B. Tolling of Repose Period

¶ 30    In the alternative, plaintiff argues that the statute of repose is tolled because defendants fraudulently concealed plaintiff's cause of action and are equitably estopped from asserting the expiration of the repose period.

¶ 31    First, plaintiff argues that its complaint meets the initial pleading requirements for fraudulent concealment and therefore tolls the statute of repose where plaintiff alleged defendants made misrepresentations or performed acts they knew were false with the intent to deceive plaintiff, and plaintiff reasonably relied, to its detriment, on defendants' misrepresentations and conduct that the opt-out notice complied with the TCPA. Plaintiff also argues that it did not need to show defendants' affirmative acts of concealment because defendants, as plaintiff's legal counsel, were plaintiff's fiduciaries and thus their silence and failure to disclose to plaintiff facts concerning a legal malpractice action constituted fraudulent concealment. Nevertheless, plaintiff also alleged affirmative acts of defendants' concealment where they repeatedly assured plaintiff that the opt-out notice statutorily complied despite their knowledge to the contrary. Plaintiff's allegations that form the basis of its fraudulent concealment claim are defendants' (1) silence despite their fiduciary duty, (2) encouragement to plaintiff to let the 2010 claim go for a while and not settle it, (3) false representations regarding the complainant's reason for dropping the 2010 claim, (4) misrepresentations in their annual correspondence to plaintiff on statutory representation services and compliance issues, and (5) encouragement to plaintiff to defend the 2017 lawsuits.

¶ 32    Second, plaintiff argues that it met the pleading requirements for equitable estoppel because, in 2010, defendants were expressly advised by opposing counsel that the opt-out language was not compliant with the TCPA requirements. However, despite their fiduciary obligation to

plaintiff, defendants failed to bring this to plaintiff's attention and verify whether opposing counsel's assessment was correct. Instead, defendants insisted that the opt-out notice was compliant. Plaintiff argues that defendants had an obligation to affirmatively correct their mistake and ensure plaintiff was counseled on compliant TCPA opt-out language. Moreover, defendants caused plaintiff to believe it had no reason to take action against defendants based on their failure to take such measures, reiterating prior bad advice, and instructing plaintiff to let it go and defend against the claims.

¶ 33    Defendants argue that the alleged malpractice occurred well beyond the applicable repose period and no exceptions apply to toll the statute of repose, which is not tolled merely by the continuation of the attorney-client relationship or an attorney's ongoing duty to correct past mistakes. Defendants argue that plaintiff cannot establish any misrepresentations or actions by them that prevented plaintiff from pursuing its claim. According to defendants, the complaint, at most, alleged defendants provided incorrect legal advice; no nonconclusory allegations suggest defendants believed the legal advice was incorrect when they provided it before 2010 and affirmed it in 2010. Regarding fraudulent concealment, defendants complain that plaintiff has failed to cite any actual fraudulent actions to sustain this claim and plaintiff's mere rote recitation of certain elements of the claim cannot suffice for pleading it. Regarding equitable estoppel, defendants argue that plaintiff neither sought nor received assurances for several years between 2010 and 2017; plaintiff cannot establish the equitable estoppel elements regarding defendants' knowing misrepresentations and intent; and plaintiff improperly alleges that the misrepresentation here is the legal advice itself that makes up the legal malpractice action.

¶ 34     Under the statute regarding fraudulent concealment, the statute of repose will be tolled if the plaintiff pleads and proves that fraud prevented the discovery of the cause of action. *Clay v. Kuhl*, 189 Ill. 2d 603, 613 (2000). Specifically, section 13-215 of the Code provides that

> "[i]f a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards." 735 ILCS 5/13-215 (West 2018).

Because it would be a "gross injustice" to allow a defendant to conceal a cause of action and then benefit from a statute of repose, this section applies to both statutes of limitations and repose. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 71-72 (2006).

¶ 35     To demonstrate fraudulent concealment, a plaintiff must show that the defendant engaged in "affirmative acts or representations designed to prevent discovery of the cause of action or to lull or induce a claimant into delaying the filing of his claim." (Internal quotation marks omitted.) *Rajcan v. Donald Garvey and Associates, Ltd.*, 347 Ill. App. 3d 403, 407 (2004). Silence alone does not ordinarily constitute fraudulent concealment unless the person occupies a fiduciary relationship to plaintiff, as in the context of an attorney-client relationship, and then a plaintiff may successfully proceed on a claim of fraudulent concealment when the attorney "fails to fulfill his duty to disclose material facts concerning the existence of a cause of action." *DeLuna*, 223 Ill. 2d at 77; see also *Hagney v. Lopeman*, 147 Ill. 2d 458, 463 (1992). However, if at the time the plaintiff discovers the fraudulent concealment a reasonable time remains within the applicable statute of limitations, section 13-215 does not toll the running of the limitations period. *Muskat v. Sternberg*, 211 Ill. App. 3d 1052, 1061 (1991).

¶ 36    "The common-law doctrine of equitable estoppel, as applied in the context of the statute of repose, parallels the fraudulent concealment statute." *Mauer*, 401 Ill. App. 3d at 648. Equitable estoppel precludes a litigant from denying prior assertions in cases where it would be unjust to permit the litigant to disavow express and implied statements upon which another party has relied and that have caused him to forego filing his suit. *Cramsey v. Knoblock*, 191 Ill. App. 3d 756, 765 (1989). A defendant is estopped from asserting the limitations bar if the plaintiff's failure to act within the statutory period results from reasonable reliance on the defendant's conduct or representations. *Witherell v. Weimer*, 118 Ill. 2d 321, 330 (1987). To establish equitable estoppel, the plaintiff must show that (1) the defendant misrepresented or concealed a material fact, (2) the defendant knew that the representations were untrue at the time they were made, (3) the plaintiff did not know that the representations were untrue both when they were made and when they were acted upon, (4) the defendant either intended or reasonably expected his representation or conduct to be acted upon, (5) plaintiff did in fact rely upon or act upon the representations or conduct, and (6) plaintiff has acted on the basis of the representations or conduct such that he would be prejudiced if defendant is not estopped. *In re Parentage of Scarlett Z.-D.*, 2015 IL 117904, ¶ 25; *Nickels v. Reid*, 277 Ill. App. 3d 849, 855 (1996).

¶ 37    "However, courts have declined to apply fraudulent concealment and equitable estoppel to toll the statute of repose in cases where the claimant discovers the fraudulent concealment, or should have discovered it through ordinary diligence, and a reasonable time remains within the remaining limitations period." *Mauer*, 401 Ill. App. 3d at 649. Furthermore, it is well-established that the basis of a legal malpractice action cannot also constitute the grounds for fraudulent concealment and equitable estoppel; there must be some misrepresentation by the defendant that

the plaintiff relied on to his detriment to prevent the filing of a legal malpractice action. *Koczor v. Melnyk*, 407 Ill. App. 3d 994, 1000 (2011); see also *Barratt v. Goldberg*, 296 Ill. App. 3d 252, 257-58 (1998) ("the allegedly fraudulent statements or omissions that form the basis of the cause of action may not constitute the fraudulent concealment in the absence of a showing that they tend to conceal the cause of action").

¶ 38     Here, even though the statute of repose was triggered in 2010, the statute was equitably tolled by defendants' alleged conduct. We find the case at bar similar to that considered by our supreme court in *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240 (1994). There, the defendant attorneys were retained in 1973 to advise the plaintiff client, a manufacturer that had developed a model machine, about a matter of patent law. *Id.* at 243. The attorneys gave the client incorrect information as to the presence of a previously existing patent held by a third party on a similar machine, and the client proceeded to manufacture and market its model machine in light of that information. *Id.* at 243-44. The client later discovered a 1975 patent-infringement lawsuit against a competitor and asked the attorneys to evaluate the impact of that litigation on the client's use of its own machines. *Id.* at 244. In a 1980 letter, one of the attorneys "assured [the client] that [the other] patent was invalid and, in addition, outlined two defenses [the client] could assert against an infringement claim." *Id.* at 245. In 1982, the holder of the other patent contacted the client, contending that the client's machines infringed on the patent, and the client again sought the attorneys' advice. *Id.* One of the attorneys again assured the client that the machines did not infringe on any valid patents and recommended bringing a declaratory judgment action against the patent holder. *Id.* The client followed that advice. In 1983, the court found in the client's favor as to several portions of its declaratory relief complaint, and the attorneys assured the client that the

favorable portions of the judgment would be affirmed on appeal. *Id.* at 246. However, the patent holder prevailed on appeal in 1984 and on remand to the trial court in 1986. *Id.* at 246-47.

¶ 39    The client filed a legal malpractice action against the attorneys in 1988, contending that they failed to properly examine the patent and negligently failed to advise the client that its machines might infringe on the patent. *Id.* at 247. In its answer, the attorneys raised the statute of limitations as an affirmative defense. *Id.* Our supreme court found that there was a question of fact as to when the client's cause of action accrued. *Id.* at 250. Furthermore, our supreme court found that the attorneys were equitably estopped from asserting the statute of limitations as a defense because the delay in filing was induced by the attorneys' actions. *Id.* at 251-53. The supreme court found that, "had it not been for defendant's constant reassurances that no patent was infringed upon and that [the patent holder's] claim was without merit, plaintiff's suit would not have been so delayed." *Id.* at 252.

¶ 40    Our supreme court emphasized that

>    "[i]t is not necessary that the defendant intentionally mislead or deceive the plaintiff, or even intend by its conduct to induce delay. [Citations.] Rather, all that is necessary for invocation of the doctrine of equitable estoppel is that the plaintiff reasonably rely on the defendant's conduct or representations in forbearing suit." (Internal quotation marks omitted.) *Id.*

The supreme court found:

>    "The law firm in this case was hired for its advice. The advice was given and the client relied on it, allegedly to its ultimate detriment. Throughout the proceedings, however, the client was reassured as to the soundness of its legal position. The mere assertion of a

contrary claim and the filing of a lawsuit were not, in and of themselves, sufficiently compelling to induce the client to seek a second legal opinion. Meritless claims and nuisance lawsuits are, after all, a fairly commonplace occurrence. It would be a strange rule if every client were required to seek a second legal opinion whenever it found itself threatened with a lawsuit. Moreover, in the case at hand, the client was lulled into a false sense of security by the firm's soothing reassurances and advice." *Id.* at 252-53.

¶ 41    Here, plaintiff contends that, on or shortly before 2010, defendants failed to properly advise plaintiff and draft compliant TCPA opt-out notice language. When plaintiff was confronted with the 2010 claim from the complainant's attorney, similar to *Jackson Jordan*, plaintiff forwarded that information to defendants and again sought their advice. Based on plaintiff's allegations, it is reasonable to infer that when defendants spoke with the complainant's attorney, they were put on notice to review their previous advice and ensure its accuracy. Similar to *Jackson Jordan*, defendants reassured plaintiff that their position was correct and advised plaintiff to let the claim go for a while, do nothing and see what happened. Soothed by these reassurances from defendants, plaintiff reasonably relied on defendants' representation that the opt-out notice was compliant and plaintiff would ultimately prevail. After the 2010 claim was dropped, defendants again assured plaintiff that their position was both correct and the reason for the dropped complaint. Soothed by these reassurances from defendants, plaintiff reasonably relied on their representation that the opt-out notice was compliant with the TCPA. Consequently, when plaintiff was named in the 2017 lawsuits, plaintiff relied on defendants' representations that the opt-out notice was compliant and defended against those claims. Ultimately, however, under the guidance of different counsel,

plaintiff settled those lawsuits. Consequently, even though the statute of repose had been triggered in 2010, it was equitably tolled by defendants' conduct.

¶ 42    We find unpersuasive defendants' claims that fraudulent concealment and equitable estoppel do not apply because, according to defendants, the basis of plaintiff's legal malpractice action also improperly constitutes the basis for equitable estoppel. See *Brummel v. Grossman*, 2018 IL App (1st) 162540, ¶ 38; *Koczor*, 407 Ill. App. 3d at 1000. The basis of plaintiff's legal malpractice claim is the alleged noncompliant original opt-out notice defendants had drafted for plaintiff by 2010. Defendants' subsequent conduct—representing to plaintiff in February 2010 (after plaintiff received the 2010 claim) that the opt-out notice was compliant despite being put on notice by the complainant's counsel that the notice was deficient; telling plaintiff to let the 2010 claim go for a while, do nothing, and see what happens; assuring plaintiff that the reason the 2010 claim was dropped was the written defense advanced by defendants that the opt-out notice was legally sufficient despite knowledge to the contrary; providing yearly compliance reviews to plaintiff until 2017 and failing to advise plaintiff to revise the deficient opt-out notice, even after plaintiff relayed a May 5, 2017 complaint to defendants; and not advising plaintiff until May 22, 2017 to replace the deficient opt-out notice with a new paragraph drafted by defendants—is not the same conduct that gave rise to the legal malpractice. Defendants' argument attempts to have it both ways—arguing that the matter is barred because the actionable conduct occurred in 2010, but then also arguing that equitable estoppel does not apply because the actionable conduct is the representations made by defendants after the actionable 2010 conduct. Plaintiff has pointed to assurances that defendants made to plaintiff after drafting the original deficient opt-out notice that

explicitly misrepresented or concealed material facts concerning the opt-out notice's compliance with the TCPA.

¶ 43    At this stage, we take as true plaintiff's allegations that defendants knew about the erroneous advice and purposely decided not to inform plaintiff so that plaintiff would not discover the mistaken legal advice and pursue a legal malpractice claim. See *Lander-Scelfo v. Corporate Office Systems, Inc.*, 356 Ill. App. 3d 1060, 1065 (2005) (a fact is well pleaded if a plaintiff has clearly set out the ultimate fact he intends to prove); *Blevins v. Marcheschi*, 2018 IL App. (2d) 170340, ¶ 29 ("Only ultimate facts to be proved should be alleged and not the evidentiary facts tending to prove such ultimate facts."); *Ward v. Community Unit School District 220*, 243 Ill. App. 3d 968, 974 (1993) ("[a] statement of a defendant's knowledge is an allegation of ultimate fact and not a conclusion"; a plaintiff "need not plead the evidentiary facts he will use to prove [the] defendant's knowledge"). Therefore, we conclude that plaintiff has pled sufficient facts to go forward on a claim that fraudulent concealment and equitable estoppel tolled the statute of repose.

¶ 44    If plaintiff is able to prove all the allegations it makes in its complaint related to defendants' knowledge and motivations for not correcting the opt-out notice sooner, the statute of repose would not bar plaintiff's claims. Based on the foregoing, plaintiff is entitled to go forward on its claim for legal malpractice. As a result, the trial court erred when it dismissed plaintiff's legal malpractice lawsuit as untimely. On remand, plaintiff can move the trial court for leave to amend its complaint.

¶ 45                                    III. CONCLUSION

¶ 46    For the foregoing reasons, we reverse the judgment of the circuit court and remand this matter for further proceedings.

¶ 47    Reversed and remanded.