SIXTH DIVISION
March 26, 2010

No. 1-08-3211

MARSHALL MAUER,                        )        Appeal from the
                                       )        Circuit Court of
            Plaintiff-Appellant,       )        Cook County, Illinois.
                                       )
v.                                     )
                                       )        No. 07 L 10338
ROGER RUBIN and BEERMAN,               )
SWERDLOVE, WOLOSHIN, BAREZKY,          )
BECKER, GENIN & LONDON,                )        Honorable
                                       )        Barbara A. McDonald,
            Defendants-Appellees.      )        Judge Presiding.


JUSTICE JOSEPH GORDON delivered the opinion of the court:

This is a legal malpractice action brought by plaintiff Marshall Mauer on October 1, 2007, against his former attorney, Roger Rubin, and Rubin's law firm, Beermann, Swerdlove, Woloshin, Barezky, Becker, Genin & London (the Beermann firm).  The issue before us on appeal is whether plaintiff's suit is barred by the six-year statute of repose for legal malpractice actions (735 ILCS 5/13-214.3 (West 2009)).

Rubin, as a member of the Beermann firm, represented Mauer in the underlying action, in which Mauer obtained a divorce from his wife, Frances Mauer (Frances).  Mauer was the president of Dynamic Healthcare Consultants, Inc., and he possessed interests in various health care entities valued at millions of dollars, as well as various debts and liabilities in connection with those interests.  After negotiating, Mauer and Frances reached an understanding regarding the division of these assets and obligations.  Defendants then drew up a written marital settlement agreement (Agreement) which the parties signed and which was incorporated into the

judgment of dissolution entered on June 18, 2001. Mauer alleges that this Agreement was defective. Specifically, he argues that defendants negligently omitted certain obligations that were attached to the divided marital properties, thus leaving him responsible for more than his proper share of the obligations. Mauer further alleges that when he brought this error to defendants' attention, defendants negligently delayed filing a petition for relief from judgment, and that they later withdrew that petition without Mauer's knowledge or consent on February 16, 2005, the date it was set for hearing. After February 16, 2005, defendants' representation of Mauer ended, and Mauer hired new counsel.

Meanwhile, the Wedgewood Nursing Pavilion, LLC, a company subject to the Agreement, was liquidated in March 2005. Under the Agreement, Frances was entitled to $831,275 of the liquidation proceeds. Mauer refused to give her this amount. He claimed that he was entitled to keep it as a set-off against her unpaid obligations that she should have borne under the understanding they reached regarding the division of their marital assets, but that were erroneously omitted from the Agreement. Frances then brought an action for conversion (hereinafter, the conversion suit) against him. On October 11, 2005, Frances prevailed in the conversion suit, and judgment in the amount of $831,275 plus interest was entered against Mauer. Subsequently, on October 1, 2007, Mauer brought the instant legal malpractice lawsuit against Rubin and the other defendant attorneys in this case, seeking damages that he allegedly incurred as a result of the defective Agreement, including the judgment rendered against him in the conversion suit.

Defendants filed motions to dismiss pursuant to 735 ILCS 5/2-619 (West 2009). They

contended, in relevant part, that Mauer's action was time-barred by the six-year statute of repose, since the action was filed over six years after the judgment of dissolution incorporating the allegedly defective Agreement. The trial court granted these motions. Mauer now appeals. For the reasons that follow, we affirm.

## I. BACKGROUND

In his complaint for legal malpractice, Mauer alleged that on January 1998, he retained the Beermann firm to represent him in a dissolution of marriage proceeding. The marital estate included interests in various partnerships and entities involved in the health care business. Many of these entities were indebted to lenders. Mauer and his ex-wife agreed to a distribution of these assets and debts whereby each of them would be responsible for the debts attached to the properties they received in the settlement, or where the parties remained co-owners of a property, they were to have joint responsibility for any debt attached to that property. Defendants then drew up the Agreement for Mauer and his ex-wife to sign. Mauer alleged that in this document, defendants inadvertently failed to attach the complete list of debts that should have been divided between him and his ex-wife, thus leaving him with more than his proper share of the debts. Mauer further alleged that Rubin assured him that all aspects of the settlement had been properly documented in the Agreement, so Mauer did not scrutinize the details of the Agreement before signing.

A copy of the Agreement, dated June 18, 2001, is attached to the complaint. It identifies Mauer as the president of Dynamic Healthcare Consultants, Inc., provides a list of ownership interests in companies that Mauer has, and provides a one-page list of loans and guarantees

attached to those interests. It also sets forth the division of those ownership interests and liabilities. The Agreement is initialed on every page by Mauer and Frances and bears their signatures at the end. On that same day, June 18, 2001, the trial court entered a judgment for dissolution of marriage that incorporated the terms of the Agreement.

After this judgment had been entered, Mauer allegedly realized that the Agreement was defective and called this matter to the attention of Rubin and Rubin's senior partner Beermann. In the complaint, he stated that this meeting occurred in July 2002. However, in a subsequently filed affidavit, he changed this date to July 2001, placing it a couple weeks after the divorce judgment. At this time, according to Mauer, Rubin assured him that he would file an appropriate motion to vacate the judgment so that the accurate list could be made part of the Agreement. However, Rubin did not actually file a postjudgment motion, styled a "motion to correct," until September 12, 2002. A copy of this motion is attached to the complaint. It states that it is being brought pursuant to section 2-1203 of the Code of Civil Procedure (735 ILCS 5/2-1203 (West 2009)), which provides for modification of a judgment in a non-jury case within 30 days after entry of the judgment, and section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2009)), which provides for relief from judgments after the 30-day period has passed. The motion seeks modification of the divorce settlement on grounds of mutual mistake.[1] The trial

---

[1] When the court approves a marital settlement agreement concerning property rights and incorporates it into the divorce judgment, the agreement is merged into the judgment, and the parties' rights thereafter rest upon that judgment. *Sondin v. Bernstein*, 126 Ill. App. 3d 703, 708, 467 N.E.2d 926, 931 (1984). Illinois courts have recognized a 2-1401 petition as a proper avenue

court struck the portion of the petition brought pursuant to section 2-1203 as untimely, leaving it as a pure 2-1401 petition. (For this reason, we shall refer to it as "the 2-1401 petition.")

In her response to the 2-1401 petition, Frances argued that modification of the judgment should be denied because Mauer's counsel waited more than 15 months after the entry of the divorce decree to file the petition and therefore did not act with due diligence. She also contended that the petition did not allege a meritorious claim, in that she had never intended to be responsible for the additional obligations that Mauer sought to attach to the Agreement, so no mutual mistake had occurred. The record does not reflect what, if any, response defendants made to these contentions. However, Mauer alleged that on February 16, 2005, the date that the section 2-1401 petition was set for hearing, Rubin advised the court and opposing counsel that he was voluntarily withdrawing the petition. According to Mauer, Rubin took this action without first informing him or obtaining his consent.

Mauer further alleged that his ex-wife filed a suit for conversion (the conversion suit) against him in 2005. He did not elaborate upon the nature of this suit in his complaint except to aver that she sought relief which would have been precluded if the defendants had handled his

_____

for reformation of such an agreement where it fails to express the parties' real intentions due to mutual mistake. See *In re Marriage of Johnson*, 237 Ill. App. 3d 381, 394, 604 N.E.2d 378, 387-88 (1992); *In re Marriage of Shelton*, 127 Ill. App. 3d 775, 780-81, 469 N.E.2d 618, 623 (1984). The petitioner bears the burden of showing, by clear and convincing evidence, that the settlement was written in terms that violate the understanding of both parties. *Johnson*, 237 Ill. App. 3d at 394, 604 N.E.2d at 388.

case with ordinary care. In October 2005, Mauer's ex-wife prevailed in her suit, and judgment in the amount of $831,000 plus interest was rendered against Mauer.

Based upon these allegations, the complaint stated that defendants had fallen short of the standard of care in the following ways:

> "19. A reasonably careful attorney handling Plaintiff's matter would have: (a) made certain the transaction was documented properly; (b) upon learning there was inadequate documentation to reflect the true agreement of the Plaintiff and his ex-wife, filed a timely post-judgment motion; and (c) would have prosecuted the 2-1401 petition; or (d) obtain the consent of the client before withdrawing the petition."

Mauer therefore sought damages in the amount of $831,000 plus interest, plus an unspecified sum for the various obligations that he alleged should have been allocated to his ex-wife but which he remained solely responsible for, by reason of the Agreement as drawn up by defendants.

Defendants each filed separate motions to dismiss under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2009) (allowing involuntary dismissal of actions not commenced within the time allowed by law)). They each contended that Mauer's action was barred by the six-year statute of repose for legal malpractice actions (735 ILCS 5/13-214.3 (West 2009)), since his complaint, filed on October 1, 2007, came over six years after judgment was entered in the dissolution of marriage case on June 18, 2001. They further contended that Mauer could not establish damages, because the judgment rendered against him in the conversion suit was a result of his own actions, not the actions of defendants.

In response to defendants' statute of repose argument, Mauer contended that defendants had been engaged in a continuous course of negligent representation that continued until defendants withdrew the 2-1401 petition on February 16, 2005. Therefore, he argued, the statute of repose did not begin to run until that date. He further averred, in an attached affidavit, that Rubin assured him on multiple occasions that the error with the Agreement would be corrected and that, even under the current version of the Agreement, his ex-wife was responsible for the guarantees and contingent liabilities attendant to the business interests which she was awarded in the divorce, despite the fact that the full list of such obligations was not attached.

In response to defendants' contention that he could not prove damages, Mauer argued that his loss in the conversion suit was, in fact, a result of defendants' negligence. He pointed out that the suit was triggered by the March 2005 liquidation of the Wedgewood Nursing Pavilion, LLC, which was one of the health care companies that Mauer had an interest in, and which was subject to the Agreement. Under the Agreement, Frances was entitled to receive $831,275 from the liquidation of the company. Mauer, in his capacity as representative of the company, wrote a check payable to Frances for $831,275, but he then refused to tender the check to her. He asserted that he was entitled to keep part of those funds as a set-off against Frances' unpaid obligations – obligations that were not explicitly listed in the Agreement as a result of defendants' alleged negligence, but that Rubin had assured Mauer that Frances would nevertheless be held responsible for. Frances then sued Mauer for conversion. The trial court rejected Mauer's set-off argument and entered judgment for Frances in the amount of $831,275 plus interest on October 11, 2005. Mauer contended that his set-off argument would have been

successful but for defendants' negligence in failing to include the obligations at issue in the Agreement and in subsequently failing to proceed with the 2-1401 petition for relief from judgment.

On May 29, 2008, after hearing oral argument on defendants' motions to dismiss, the trial court granted the motions in part and denied them in part. It found that Mauer's allegations of negligence occurring prior to the June 18, 2001, entry of judgment in the divorce case were time-barred under the statute of repose. Accordingly, the court dismissed paragraph 19(a) of Mauer's complaint, which dealt with defendants' alleged failure to draft the Agreement properly. At oral argument, defendants also argued that Mauer's allegations of negligence subsequent to the entry of judgment in the divorce case – that is, defendants' alleged failure to properly file and prosecute a petition for relief from judgment – could not form the basis for any recovery, insofar as Mauer could not show that a correctly-handled petition would have been successful. Any damages arising from the mishandling of the petition would necessarily be speculative, they argued. Defendants therefore urged the court to dismiss Mauer's complaint in its entirety. The court acknowledged that this argument was "persuasive," but it found that defendants did not adequately raise it in their motion to dismiss, so Mauer had not yet been afforded a proper chance to respond to it. The court therefore declined to dismiss the remainder of Mauer's complaint, but it stated that defendants were allowed to file another motion to dismiss.

Defendants then filed 2-619 motions to dismiss the remaining portions of Mauer's complaint, raising the argument outlined above. On October 20, 2008, after hearing oral argument by the parties, the trial court granted those motions and dismissed Mauer's complaint

No. 08-2311

with prejudice in its entirety. It is from this judgment that Mauer now appeals.


## II. ANALYSIS

At issue in this case is whether Mauer's action is barred under the six-year statute of repose for legal malpractice actions.[2] Mauer filed his suit on October 1, 2007. Defendants argue that time began to run on the statute of repose on June 18, 2001, the date of entry of the judgment of dissolution incorporating the allegedly defective Agreement. Mauer, on the other hand, contends that time did not begin running on the statute of repose until February 16, 2005, when defendants withdrew his 2-1401 motion and their representation of him ended. In the alternative, Mauer contends that the statute of repose should be tolled in accordance with the doctrines of equitable estoppel and fraudulent concealment, because of his allegations that defendants lulled him into inaction by falsely assuring him that his interests were being protected. We consider these contentions in turn, reviewing the trial court's ruling on this matter *de novo*. *Trogi v. Diabri & Vicari, P.C.*, 362 Ill. App. 3d 93, 95, 839 N.E.2d 553, 555 (2005) (*de novo* review of 2-619 motion to dismiss based on statute of repose).

### A. Starting Date of the Period of Repose

Mauer first argues that defendants were engaged in a continuous course of negligent conduct toward him from the time that Rubin drew up the defective Agreement to the time that

---

[2] Defendants also argue, as they did before the trial court, that plaintiff's claim is time-barred under the two-year statute of limitations. However, we need not address this issue, because we find the statute of repose issue to be dispositive of this appeal.

Rubin withdrew his 2-1401 motion for relief from judgment on February 16, 2005. Therefore, Mauer contends that the statute of repose should not begin to run until February 16, 2005. Defendants, on the other hand, contend that all of Mauer's injuries resulted from alleged acts or omissions occurring on or before June 18, 2001, when the Agreement was signed and the divorce judgment was entered, so that date marks the proper start of the repose period.

Section 13-214.3 of the Code of Civil Procedure sets out the statutes of limitation and repose for legal malpractice actions as follows:

> "(b) An action for damages based on tort, contract, or otherwise (i) against an attorney arising out of an act or omission in the performance of professional services or (ii) against a non-attorney employee arising out of an act or omission in the course of his or her employment by an attorney to assist the attorney in performing professional services must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought.
>
> (c) An action described in subsection (b) may not be commenced in any event more than 6 years after the date on which the act or omission occurred." 735 ILCS 5/13-214.3 (West 2009).

Thus, the statute of limitations begins to run after a cause of action has accrued, while the statute of repose, which is at issue in the present case, begins to run as soon as an event creating the malpractice occurs, regardless of whether any injury has yet resulted so as to cause an action to accrue. *Trogi*, 362 Ill. App. 3d at 96, 839 N.E.2d at 556, citing *Ferguson v. McKenzie*, 202 Ill. 2d 304, 311, 780 N.E.2d 660, 664 (2001); *DeLuna v. Burciaga*, 223 Ill. 2d 49, 61, 857 N.E.2d

229, 237 (2006); see *Meyers v. Underwood*, 316 Ill. App. 3d 970, 985-86, 738 N.E.2d 118, 129 (2000) (not fundamentally unfair for statute of repose to bar plaintiffs' legal malpractice claims before they accrued). This is because the statute of repose "is intended to terminate the possibility of liability after a defined period of time, regardless of a potential plaintiff's lack of knowledge of his or her cause of action." *Ferguson*, 202 Ill. 2d at 311, 780 N.E.2d at 664.

As noted above, Mauer first contends that defendants were engaged in a continuous course of negligent conduct toward him, and the operative date for purposes of the statute of repose should therefore be the date that such negligent conduct ended – namely, February 16, 2005, when defendants voluntarily dismissed his 2-1401 petition for relief from the divorce judgment. In this regard, he seeks to draw an analogy to our supreme court's recognition of the continuous course of negligent treatment doctrine in the realm of medical malpractice. *Cunningham v. Huffman*, 154 Ill. 2d 398, 406, 609 N.E.2d 321, 325 (1993). Under that doctrine, if a physician engages in a continuous and unbroken course of negligent treatment, and the treatment is "so related as to constitute one continuing wrong," the statute of repose will not start to run until the last date of negligent treatment. *Cunningham*, 154 Ill. 2d at 406, 609 N.E.2d at 325. This differs from the continuous course of treatment doctrine, which the *Cunningham* court explicitly rejected. *Cunningham*, 154 Ill. 2d at 403, 609 N.E.2d at 324. Under the continuous course of treatment doctrine, the statute of repose for a medical malpractice case does not begin to run until the patient-physician relationship ends, as long as the physician has been continuously treating plaintiff for a condition that was occasioned by a prior negligent act – regardless of whether the physician's subsequent treatment of the condition was negligent.

*Cunningham*, 154 Ill. 2d at 403, 609 N.E.2d at 324. By contrast, the continuous course of negligent treatment doctrine covers situations where "the cumulative results of continued negligence is the cause of the injury." *Cunningham*, 154 Ill. 2d at 405, 609 N.E.2d at 325. Consequently, it "necessarily only encompasses the continuum where the physician was negligent." *Cunningham*, 154 Ill. 2d at 407, 609 N.E.2d at 325. Thus, for instance, it would apply to situations in which patients are injured "due to negligent or unnecessary exposure to X-ray radiation or administration of medication over a span of years." *Cunningham*, 154 Ill. 2d at 405, 609 N.E.2d at 325.

Just as the *Cunningham* court rejected the continuous course of treatment doctrine with regard to medical malpractice, Illinois courts have rejected the continuous course of representation doctrine with regard to legal malpractice, finding that the statute of repose is not tolled merely by the continuance of the attorney-client relationship. See *Witt v. Jones & Jones Law Offices, P.C.*, 269 Ill. App. 3d 540, 544, 646 N.E.2d 23, 25 (1995) (citing *Cunningham* in rejecting continuous representation rule); *Sorenson v. Law Offices of Theodore Poehlmann*, 327 Ill. App. 3d 706, 710, 764 N.E.2d 1227, 1231 (2002) (continued existence of attorney-client relationship after preparation of allegedly defective antenuptial agreement did not affect starting point of period of repose). Nor does Mauer contest this fact in his brief. Mauer instead argues that he was injured due to a continuous course of *negligent* legal representation over a span of years, beginning with defendants' initial drafting of the defective Agreement, continuing to their delay in filing a motion for relief from judgment, and lasting until their withdrawal of the motion without his knowledge or consent on February 16, 2005. Thus, he contends, under *Cunningham*,

the period of repose for this continuous course of negligent representation should not start until that final date.

However, the decision of our supreme court in *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 770 N.E.2d 177 (2002), casts doubt upon whether the continuous course of negligent treatment doctrine, as articulated in *Cunningham*, can be applied to the realm of legal malpractice. Although *Belleville* was not a legal malpractice case, it is relevant here because it considered, and rejected, application of the continuous tort doctrine to extend the period of limitations in a non-medical-malpractice setting. The period of limitations at issue in *Belleville* was the four-year limit under the Motor Vehicle Franchise Act (Act) (815 ILCS 710/14 (West 2000)). Plaintiff, an automobile dealership, sued defendants for alleged violations of the Act, claiming that defendants had failed to allocate to it the requisite amount of Toyota vehicles over the previous decade. *Belleville*, 199 Ill. 2d at 328, 770 N.E.2d at 181. It argued that these acts of improper allocation constituted a continuous decade-long course of tortious conduct, and so, by analogy to *Cunningham*, the limitations period should not begin to run until that course had ended. *Belleville*, 199 Ill. 2d at 345, 770 N.E.2d at 190.

The *Belleville* court rejected this attempted extension of *Cunningham*, explaining that *Cunningham* "did not adopt a continuing violation rule of general applicability in all tort cases." *Belleville*, 199 Ill. 2d at 347, 770 N.E.2d at 191. Rather, its holding relied in part upon the particular language of the medical malpractice statute of repose, which provides that an action may not be brought "more than 4 years after the date on which occurred the *act or omission or occurrence* alleged in such action to have been the cause of such injury or death" (emphasis

added) (735 ILCS 5/13-212(a) (West 2009)).  *Cunningham*, 154 Ill. 2d at 405, 609 N.E.2d at 325; *Belleville*, 199 Ill. 2d at 346, 199 Ill. 2d at 347, 770 N.E.2d at 190.  The *Cunningham* court stated that an "occurrence," as distinguished from a mere "act or omission," could be construed to refer to a continuing course of negligent conduct.  *Cunningham*, 154 Ill. 2d at 405, 609 N.E.2d at 325.  By contrast, the *Belleville* court found that no comparable "occurrence" language existed in the Act to mandate a similar result.  *Belleville*, 199 Ill. 2d at 347, 770 N.E.2d at 191; see 815 ILCS 710/14 (West 2000) ("actions arising out of any provision of this Act shall be commenced within 4 years next after the cause of action accrues").

Likewise, the statute of repose for legal malpractice does not contain any reference to an "occurrence" occasioning a lawsuit; it merely provides that an action for legal malpractice "may not be commenced in any event more than 6 years after the date on which the *act or omission* occurred."  (Emphasis added.)  735 ILCS 5/13-214.3 (West 2009).  Therefore, it is arguable under the reasoning of *Belleville* that, notwithstanding *Cunningham*'s acceptance of the continuous course of negligent treatment doctrine in the realm of medical malpractice, there is no parallel continuous course of negligent representation doctrine in the realm of legal malpractice.

Nevertheless, we need not decide this issue, because even if the continuous course of negligent representation doctrine were to exist, it would not be applicable under the facts of this particular case.  The negligence described in *Cunningham* qualifies as a continuous course because it is "cumulative" (*Cunningham*, 154 Ill. 2d at 405, 609 N.E.2d at 325): that is, each negligent treatment adds to the harm suffered by plaintiff, independently worsening the injury.  See *Turner v. Nama*, 294 Ill. App. 3d 19, 30, 689 N.E.2d 303, 311 (1997) (*Cunningham* doctrine

applies to "the aggregate injury caused by the compounding effects of an ongoing course of continuous negligent medical treatment for a specific condition"), citing *Cunningham*, 154 Ill. 2d at 405, 609 N.E.2d at 325. To quote our supreme court on the matter:

> "A continuing violation or tort is occasioned by continuing unlawful acts and conduct, not by continual ill effects from an initial violation. [Citations.] Thus, where there is a single overt act from which subsequent damages may flow, the statute begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury, and this is so despite the continuing nature of the injury." *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 278-79, 798 N.E.2d 75, 85 (2003).

Although *Feltmeier* involved application of the continuing violation rule to a claim of intentional infliction of emotional distress, its explanation of what a continuing violation entails is still relevant here, since the court was speaking of continuing violations generally and, in fact, cited *Cunningham* as another example of the continuing violation rule in practice. *Feltmeier*, 207 Ill. 2d at 279-80, 798 N.E.2d at 86.

In the present case, following the explanations in *Turner* and *Feltmeier*, we find that the injury alleged by Mauer is not cumulative or aggregate in nature, so as to trigger application of the continuing violation doctrine. Rather, the harm to Mauer's interests was done once the judgment of dissolution incorporating the allegedly defective Agreement was entered, and all the subsequent events alleged by Mauer, including the failure of his set-off defense in the conversion suit brought by his ex-wife, can be traced to the entry of that judgment. The actions of Mauer's counsel subsequent to that judgment did not exacerbate his injury in the same way that, for

instance, repeated administration of the wrong medicine can exacerbate a patient's ill health with each treatment (see *Cunningham*, 154 Ill. 2d at 405, 609 N.E.2d at 325). Accord *Fricka v. Bauer*, 309 Ill. App. 3d 82, 84, 722 N.E.2d 718, 720 (1999) (period of repose for legal malpractice actions is not tolled by the attorney's "continuing duty to correct any defect or omission related to the work product" after the work product is complete).

*Serafin v. Seith*, 284 Ill. App. 3d 577, 586, 672 N.E.2d 302, 309 (1996), deals with a similar situation in which the court rejected plaintiff's continuous course of negligent representation theory. The facts of *Serafin* are as follows: In 1986, plaintiff and two other individuals formed a corporation with the assistance of the defendant law firm. *Serafin*, 284 Ill. App. 3d at 579, 672 N.E.2d at 305. Plaintiff owned 30% of the corporation's shares, and the two other individuals together owned the remaining 70%. *Serafin*, 284 Ill. App. 3d at 580, 672 N.E.2d at 305. In 1991, one of the other individuals proposed that the articles of incorporation be amended to eliminate shareholders' preemptive rights to acquire unissued shares of the corporation, and plaintiff signed documents approving the change. *Serafin*, 284 Ill. App. 3d at 581, 672 N.E.2d at 306. The two individuals then proceeded to issue a flood of new shares which they kept for themselves, diluting plaintiff's ownership interest in the company to virtually nothing. *Serafin*, 284 Ill. App. 3d at 582, 672 N.E.2d at 306. Plaintiff brought suit against the two individuals, and in 1993, he amended his complaint to add a legal malpractice claim against the defendant law firm. *Serafin*, 284 Ill. App. 3d at 579, 672 N.E.2d at 305.

At issue in *Serafin* was the operative date for the statute of repose with regard to plaintiff's legal malpractice claim. Citing *Cunningham*, plaintiff contended that the defendant

law firm engaged in a continuous course of negligent representation from the founding of the company in 1986 to the time that plaintiff agreed to modify the articles of incorporation in 1991, since the defendant law firm had a continuing duty to warn him of the dangers of such a change. *Serafin*, 284 Ill. App. 3d at 586, 672 N.E.2d at 309. Thus, plaintiff argued, the statute of repose would not begin to run on his claim until 1991. *Serafin*, 284 Ill. App. 3d at 586, 672 N.E.2d at 309. The court rejected this argument, instead finding that the period of repose began in 1986, thus rendering plaintiff's claim time-barred. *Serafin*, 284 Ill. App. 3d at 586, 672 N.E.2d at 309. In doing so, the court did not explicitly rule upon whether the continuous course of negligent representation doctrine could be recognized in Illinois. *Serafin*, 284 Ill. App. 3d at 586, 672 N.E.2d at 309. Instead, the court reasoned that plaintiff's claim was entirely predicated upon the firm's failure to inform him in 1986, when the articles of incorporation were being drafted, that his preemptive rights could later be eliminated by the majority shareholders. *Serafin*, 284 Ill. App. 3d at 586, 672 N.E.2d at 309. This was the case because, under Illinois law, an affirmative vote of two-thirds of a corporation's shares was sufficient to eliminate preemptive rights. *Serafin*, 284 Ill. App. 3d at 586, 672 N.E.2d at 309, citing 805 ILCS 5/10.20(c) (West 1992). Consequently, once the articles of incorporation had been drawn up with plaintiff as a 30% shareholder, he was powerless to prevent the other two individuals from eliminating his preemptive rights, regardless of any warnings the defendant law firm might have given him. *Serafin*, 284 Ill. App. 3d at 586, 672 N.E.2d at 309. That is, plaintiff had not actually alleged a continuous course of negligent conduct toward him but rather, to use the words of the *Feltmeier* court, a "single overt act from which subsequent damages may flow" (*Feltmeier*, 207 Ill. 2d at

279, 798 N.E.2d at 85). In the same way, the alleged damage to Mauer's monetary interests was already complete once the Agreement was incorporated into the judgment of dissolution, so under *Serafin* and *Feltmeier*, the statute of repose will not be tolled by events occurring after that judgment.

The case of *Hester v. Diaz*, 346 Ill. App. 3d 550, 805 N.E.2d 255 (2004), is also instructive in this regard. The *Hester* plaintiff retained defendants to represent her in connection with a workers' compensation claim. *Hester*, 346 Ill. App. 3d at 551, 805 N.E.2d at 257. On October 31, 1994, her case was called for hearing, but no one appeared on her behalf, so the case was dismissed for want of prosecution. *Hester*, 346 Ill. App. 3d at 551, 805 N.E.2d at 257. Defendants later filed a motion to reinstate the case on February 2, 2005, and the case was continued to December 3, 1996. *Hester*, 346 Ill. App. 3d at 552, 805 N.E.2d at 257. However, defendants failed to appear on her behalf on that date as well. *Hester*, 346 Ill. App. 3d at 552, 805 N.E.2d at 258.

Despite the fact that defendants' alleged negligence with regard to plaintiff's claim continued beyond the initial dismissal of her claim on October 31, 1994, the court found that the statute of repose began to run from the date of that initial dismissal. *Hester*, 346 Ill. App. 3d at 555, 805 N.E.2d at 260. The court explained:

> "We reach this determination because of the finality of the dismissal. Malpractice occurred at that time when the case was allowed to be dismissed for want of prosecution. While there was case activity both within and without the workers' compensation file after that date, that activity does not change the status of the case, which was 'dismissed.'

> *** We cannot conclude that the failure to appear at the December 3, 1996, setting was the relevant act or omission. As of that date, the case had been dismissed. There were no guarantees relative to reinstatement on that date. We will not speculate that simply because reinstatement is freely allowed in the workers' compensation arena, this particular case would have enjoyed that treatment. No one can know that for certain."

*Hester*, 346 Ill. App. 3d at 554-55, 805 N.E.2d at 260.

Thus, the court found that plaintiff's lawsuit, filed on March 1, 2002, was not timely under the statute of repose. *Hester*, 346 Ill. App. 3d at 555, 805 N.E.2d at 260. (We note at this juncture that there was also an issue of equitable estoppel in *Hester*, which Mauer raises in his brief. We shall discuss this issue when we consider Mauer's equitable estoppel argument.)

Likewise, in the present case, malpractice allegedly occurred at the time when the judgment of dissolution incorporating the allegedly defective Agreement was entered on July 18, 2001. While there was activity on the part of defendants after that date, this activity does not change the fact that a final judgment had been rendered in plaintiff's case, and there were no facts alleged that would tend to establish that defendants' actions compounded the damage caused by that final judgment (see *Turner*, 294 Ill. App. 3d at 30, 689 N.E.2d at 311). Accordingly, under *Hester* as well as *Serafin*, the period of repose for defendants' alleged negligence in drawing up the divorce decree began to run when judgment was entered in the underlying divorce case on July 18, 2001.

Despite these cases, Mauer nevertheless argues that the beginning of the period of repose should be delayed under *Trogi*, which he cites for the proposition that the statute of repose does

not begin to run until the date of the " 'last act of representation upon which the malpractice is founded.' " *Trogi*, 362 Ill. App. 3d at 96, 839 N.E.2d at 556, quoting *O'Brien v. Scovil*, 332 Ill. App. 3d 1088, 1089, 774 N.E.2d 466, 467 (2002). He argues that the relevant "last act of representation" in his case was the defendants' withdrawal of his 2-1401 petition on February 16, 2005. However, analysis of *Trogi* does not support Mauer's interpretation.

The alleged malpractice in *Trogi* occurred in a transactional context. Plaintiff retained the defendant law firm to represent him in purchasing real property. *Trogi*, 362 Ill. App. 3d at 94, 839 N.E.2d at 554. Defendant prepared a deed for the property, and once it was executed, defendant recorded the deed and mailed it to plaintiff, advising him to keep it in a safe place. *Trogi*, 362 Ill. App. 3d at 94, 839 N.E.2d at 554. Plaintiff subsequently brought an action for legal malpractice, claiming that defendant had recorded the deed in the wrong county, thus causing him to lose his interest in the property. *Trogi*, 362 Ill. App. 3d at 94-95, 839 N.E.2d at 554. The court found that, under these facts, the period of repose would not begin until the date that defendant sent the improperly recorded deed to plaintiff, since delivery of the final work product to the client was the relevant "last act of representation" involved in the malpractice. *Trogi*, 362 Ill. App. 3d at 96, 98, 839 N.E.2d at 556-57.

However, the *Trogi* decision did not purport to be at odds with the decision in *Hester*; indeed, the court is at pains to show that the two decisions are compatible. The court draws an analogy between the delivery of a final work product to a client in a transactional context (which is at issue in *Trogi*) with the rendering of judgment in a litigation context (which is at issue in *Hester* and in the present case). *Trogi*, 362 Ill. App. 3d at 98, 839 N.E.2d at 558. Each of these,

according to the *Trogi* court, may be considered a "final event" triggering the start of the period of repose. *Trogi*, 362 Ill. App. 3d at 98, 839 N.E.2d at 558. This is true notwithstanding the attorney's ongoing duty to correct any malpractice committed. See *Fricka*, 309 Ill. App. 3d at 84, 722 N.E.2d at 720 (ongoing duty to correct does not delay beginning of period of repose). The *Trogi* court explained that in both cases, having such a definite cutoff serves the purpose of the statute of repose, namely, terminating the possibility of liability after a defined period of time. *Trogi*, 362 Ill. App. 3d at 98, 839 N.E.2d at 558; see *Ferguson*, 202 Ill. 2d at 311, 780 N.E.2d at 664 (the purpose and effect of statutes of repose " 'is to establish an absolute limit for bringing suit' "), quoting *Franklin v. Cernovich*, 287 Ill. App. 3d 776, 779, 679 N.E.2d 98, 100 (1997). Thus, the *Trogi* decision does not detract from the conclusion we have reached above under *Hester* and *Serafin*, but rather supports it.

Mauer next contends that, even if the period of repose would not be extended by the *Cunningham* doctrine and recovery for defendants' original negligent conduct is therefore time-barred, the failure of defendants' attempts to remediate that original negligent conduct by pursuing the 2-1401 petition should provide an independent basis for recovery to which the statute of repose should separately apply. This contention is inconsistent with the holding in *Hester*, which relates the beginning of the period of repose to the initial malpractice which gave rise to the plaintiff's loss and created the subsequent need for remediation. However, even if negligence in the remediation process could be separated from defendants' original act of negligence, such separate recovery would not be available to the plaintiff in this case, since Mauer failed to plead those facts which would be necessary to enable him to pursue a claim for

No. 08-2311

such negligence as an independent cause of action. Specifically, he did not plead that the defendants' negligence with respect to the filing and ultimate withdrawal of the 2-1401 petition was the proximate cause of his injury. In other words, Mauer did not plead that, but for such negligence, the 2-1401 petition would have been successful, which, as discussed below, must be pled.

To prevail in a negligence claim, plaintiff must not only show that defendant committed a breach of duty and that plaintiff suffered damages, but also that defendant's action proximately caused those damages. *Serafin*, 284 Ill. App. 3d at 586-87, 672 N.E.2d at 309. In other words, plaintiff must show that, but for the negligence of defendant, he would not have suffered the claimed loss. *Serafin*, 284 Ill. App. 3d at 587, 672 N.E.2d at 309; *Ignarski v. Norbut*, 271 Ill. App. 3d 522, 525-26, 648 N.E.2d 285, 288 (1995). Thus, in a legal malpractice claim involving failed litigation, plaintiff must essentially prove a "case within a case," bearing the burden of demonstrating that he would have been successful in the underlying suit were it not for defendant's negligence. *Orzel v. Szewczyk*, 391 Ill. App. 3d 283, 290, 908 N.E.2d 569, 575 (2009); *First Nat'l Bank of LaGrange v. Lowrey*, 375 Ill. App. 3d 181, 200, 872 N.E.2d 447, 484-85 (2007); *Ignarski*, 271 Ill. App. 3d at 525-26, 648 N.E.2d at 288. A causal link between the alleged negligence and the loss of the underlying suit will not be presumed. *LaGrange*, 375 Ill. App. 3d at 200, 872 N.E.2d at 485; *Ignarski*, 217 Ill. App. 3d at 528. Where plaintiff fails to allege facts that would establish success in the underlying suit, he has failed to plead a cause of action. *Ignarski*, 271 Ill. App. 3d at 528, 648 N.E.2d at 290. This is true even where it is conceded that defendant committed negligence in his handling of the underlying lawsuit. *See*

-22-

*Sheppard v. Krol*, 218 Ill. App. 3d 254, 258, 578 N.E.2d 212, 215 (1991) (legal malpractice claim properly dismissed where plaintiff failed to allege facts in his complaint demonstrating that he would have prevailed in the underlying suit); *Claire Associates v. Pontikes*, 151 Ill. App. 3d 116, 123, 502 N.E.2d 1186, 1191 (1986) (legal malpractice claim properly dismissed for failure to state a cause of action where plaintiffs alleged insufficient facts to demonstrate that underlying suit was meritorious, notwithstanding allegations of negligence on the part of defendants due to their failure to properly prosecute that suit and an unsupported assertion that the suit was meritorious).

That element is lacking in the present case. Mauer fails to specifically allege in his complaint that if defendants had filed a petition to correct the judgment in a timely manner and had not later withdrawn the petition, the court would have granted plaintiff his desired modifications to the divorce decree and the damages which he now claims would therefore have been averted. Accordingly, Mauer has not pled that any of defendants' actions subsequent to the June 18, 2001, divorce decree were a proximate cause of his injury, and he cannot now claim that such acts form an independent basis for recovery on a theory of legal malpractice. See, *e.g.*, *Ignarski*, 271 Ill. App. 3d at 528, 648 N.E.2d at 290; *Sheppard*, 218 Ill. App. 3d at 259-60, 578 N.E.2d at 216; *Claire Associates*, 151 Ill. App. 3d at 123, 502 N.E.2d at 1191.

The *Serafin* decision is pertinent here as well. The *Serafin* court rejected the idea that the defendant law firm's 1991 conduct could form the basis of an independent cause of action, because it found that even if the defendant law firm had breached its duty to plaintiff after 1986, plaintiff could not show that such breach of duty was a proximate cause of his injury. *Serafin*,

284 Ill. App. 3d at 586, 672 N.E.2d at 309. Thus, insofar as plaintiff's complaint was premised upon the defendant law firm's 1991 conduct, it was properly dismissed for failure to state a cause of action. *Serafin*, 284 Ill. App. 3d at 586, 672 N.E.2d at 309. The same is true of the instant case with regard to defendants' actions after the entry of the divorce judgment.

### B. Fraudulent Concealment and Equitable Estoppel

Mauer next contends that defendants lulled him into inaction by falsely assuring him that his interests would be protected despite the entry of the defective Agreement. Therefore, he argues, the statute of repose should be tolled in accordance with the fraudulent concealment statute (735 ILCS 5/13-215 (West 2009)) and the doctrine of equitable estoppel. Defendants respond that, regardless of whether any fraudulent concealment occurred, Mauer learned or should have learned of their alleged negligence when Frances prevailed in the conversion suit on October 11, 2005, a full year and eight months before the statute of repose was set to expire. Since Mauer had ample time to file an action within the statutory time period, they argue that he is not entitled to any tolling of the statute of repose.

The fraudulent concealment statute, contained in section 13-215 of the Code of Civil Procedure, provides:

> "If a person liable to an action fraudulently conceals the cause of such action from the
> knowledge of the person entitled thereto, the action may be commenced at any time
> within 5 years after the person entitled to bring the same discovers that he or she has such
> cause of action, and not afterwards." 735 ILCS 5/13-215 (West 2009).

See *DeLuna*, 223 Ill. 2d at 74, 857 N.E.2d at 244 (holding that under section 13-215, a

No. 08-2311

defendant's fraudulent concealment tolls the statute of repose for legal malpractice actions);

*Rajcan v. Donald Garvey & Associates, Ltd.*, 347 Ill. App. 3d 403, 408, 807 N.E.2d 725, 729

(2004) (plaintiffs' allegations of fraudulent concealment were sufficient to avoid 2-619 dismissal

under the statute of repose).

The common-law doctrine of equitable estoppel, as applied in the context of the statute of

repose, parallels the fraudulent concealment statute. *Turner*, 294 Ill. App. 3d at 26, 689 N.E.2d

at 308. Under this doctrine, a party may estop another person from asserting material facts

where:

"(1) the other person misrepresented or concealed material facts; (2) the other person

knew at the time he or she made the representations that they were untrue; (3) the party

claiming estoppel did not know that the representations were untrue when they were

made and when that party decided to act, or not, upon the representations; (4) the other

person intended or reasonably expected that the party claiming estoppel would determine

whether to act, or not, based upon the representations; (5) the party claiming estoppel

reasonably relied upon the representations in good faith to his or her detriment; and (6)

the party claiming estoppel would be prejudiced by his or her reliance on the

representations if the other person is permitted to deny the truth thereof." *DeLuna*, 223

Ill. 2d at 82-83, 857 N.E.2d at 249.

However, courts have declined to apply fraudulent concealment and equitable estoppel to

toll the statute of repose in cases where "the claimant discovers the fraudulent concealment, or

should have discovered it through ordinary diligence, and a reasonable time remains within the

-25-

remaining limitations period." *Smith v. Cook County Hospital*, 164 Ill. App. 3d 857, 862, 518 N.E.2d 336, 340 (1987); see *Serafin*, 284 Ill. App. 3d at 589, 672 N.E.2d at 311 ("doctrine of equitable estoppel will not apply to a case if defendant's conduct terminated within ample time to allow the plaintiff to still avail himself of any legal rights he may have had"), citing *Cramsey v. Knoblock*, 191 Ill. App. 3d 756, 766, 547 N.E.2d 1358, 1365 (1989) (no equitable estoppel where "plaintiffs had an opportunity to file an action within the limitation period, but did not do so – for no reason that can be attributed to defendants' statements or conduct"); *Turner*, 294 Ill. App. 3d at 28, 689 N.E.2d at 310 (fraudulent concealment exception did not apply where plaintiff should have discovered the alleged concealment through ordinary diligence eight months before the repose period elapsed); accord *Witt*, 269 Ill. App. 3d at 544, 646 N.E.2d at 25 (plaintiffs could not avail themselves of fraudulent concealment doctrine where, notwithstanding the possibility of fraudulent concealment, plaintiffs had actual knowledge of their cause of action within the statutory timeframe). Thus, where a plaintiff has been put on inquiry as to a defendant's fraudulent concealment within a reasonable time before the ending of the statute of repose, such that he should have discovered the fraud through ordinary diligence, he cannot later use fraudulent concealment as a shield in the event that he does not file suit within the statutory period. *Smith*, 164 Ill. App. 3d at 862, 518 N.E.2d at 340, citing *Real v. Kim*, 112 Ill. App. 3d 427, 435-36, 445 N.E.2d 783, 789 (1983) (once decedent was diagnosed with brain cancer, he was put on inquiry that the defendant health care providers might have misdiagnosed him three years earlier, and as a result "he then had the burden of investigating whether he had a cause of action for medical malpractice"); see *Rajcan*, 347 Ill. App. 3d at 409, 807 N.E.2d at 729 (noting

that, in legal malpractice case, it was arguable that defendant counsel's "repeated failures to honor the requests for the document [at issue in the lawsuit] should have put plaintiffs on inquiry as to fraudulent concealment" approximately a year before the running of the statute of repose, thus defeating plaintiff's fraudulent concealment argument).

In this case, judgment was entered against Mauer in the conversion suit on October 11, 2005, over a year and eight months before the statute of repose was set to expire on June 18, 2007. In entering judgment against Mauer, the court rejected Mauer's argument that he was entitled to keep the proceeds from the liquidation of the Wedgewood Nursing Pavilion as a set-off against his ex-wife's unpaid obligations. Thus, at that point, Mauer knew or should have known that the Agreement was not protecting his interests in the way that he desired it to. At the very least, he was put on inquiry that his counsel's repeated reassurances that his interests would be protected were false. Thus, even assuming for the sake of argument that the defendants fraudulently concealed the cause of action from him, such concealment could not have been maintained in the face of ordinary diligence once judgment was rendered against Mauer in the conversion suit. Indeed, Mauer admits as much in his response to defendants' initial motions to dismiss, in which he states:

> "It was not until October 11, 2005, when plaintiff was unable to successfully prosecute his set-off defense based on the MSA it was realized that the failure to correct the error in the MSA was fatal to his defense in the action filed by his wife."

Mauer had over a year and eight months from this admitted realization to file his action within the period of repose, which certainly qualifies as ample time. See, *e.g.*, *Butler v. Mayer, Brown*

*& Platt*, 301 Ill. App. 3d 919, 926, 704 N.E.2d 740, 745 (1998) ("We have held that as little as six months remaining in a statute of limitations period is 'ample time' for a plaintiff to bring suit"), citing *Smith*, 164 Ill. App. 3d at 863, 518 N.E.2d at 340; *Turner*, 294 Ill. App. 3d at 28, 689 N.E.2d at 310 (eight months considered ample time to bring suit); *Sabath v. Mansfield*, 60 Ill. App. 3d 1008, 1015, 377 N.E.2d 161, 167 (1978) (same); *Real*, 112 Ill. App. 3d at 435-36, 445 N.E.2d at 789 (fraudulent concealment claim rejected where decedent was alerted to the possibility of alleged malpractice ten months before the running of the period of limitations); *Rajcan*, 347 Ill. App. 3d at 409, 807 N.E.2d at 729 (being put on inquiry regarding legal malpractice claim one year before expiration of repose period would constitute reasonable time to bring suit as a matter of law). Yet he did not file his action within the period of repose. Instead, for no reason that appears in the record, he waited for nearly two years after his discovery of defendants' alleged negligence to bring the instant suit, by which time the statute of repose had expired. Consequently, regardless of whether defendants concealed the cause of action from him, Mauer may not now apply the doctrines of fraudulent concealment and equitable estoppel to toll the statute of repose.

Mauer nevertheless argues that his case is analogous to *Hester*, 346 Ill. App. 3d at 556, 805 N.E.2d at 261, in which the equitable estoppel doctrine was applied to toll the statute of repose. As discussed earlier, the defendant attorneys in *Hester* failed to appear on plaintiff's behalf at her workers' compensation hearing on October 31, 1994, and her case was dismissed for want of prosecution. *Hester*, 346 Ill. App. 3d at 551, 805 N.E.2d at 257. The plaintiff further alleged that the defendants failed to inform her that her case had been dismissed. *Hester*, 346 Ill.

App. 3d at 556, 805 N.E.2d at 260. Instead, for the next seven years, they reassured her that her case was proceeding as it should. *Hester*, 346 Ill. App. 3d at 556, 805 N.E.2d at 260. They did not inform her of the truth until December 10, 2001, over a year after the statute of repose had expired. *Hester*, 346 Ill. App. 3d at 552, 805 N.E.2d at 258. The court found that these allegations sufficiently raised the issue of equitable estoppel to preclude dismissal of her untimely-filed claim under the statute of repose. *Hester*, 346 Ill. App. 3d at 556, 805 N.E.2d at 260. However, *Hester* is readily distinguishable from the case at hand, since the *Hester* plaintiff alleged that the fraudulent concealment lasted until well after the statute of repose had expired, while in the present case, Mauer had over a year and eight months after becoming aware of his counsel's alleged negligence in which to file his claim within the statutory time period.

Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

CAHILL, P.J., and R.E. GORDON, J., concur.

| | REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT<br>(Front Sheet to be Attached to Each Case) |
|---|---|
| Please use the following form | Marshall Mauer,<br><br>                     Plaintiff-Appellant,<br><br>v.<br><br>Roger Rubin and Beermann, Swerdlove, Woloshin, Barezky, Becker, Genin & London,<br><br>                     Defendants-Appellees. |
| Docket No.<br><br>COURT<br><br><br>Opinion Filed | No. <u>1-08-3211</u><br><br>Appellate Court of Illinois<br>First District, <u>SIXTH</u> Division<br><br><u>March 26, 2010</u><br>(Give month, day and year) |
| <br><br>JUSTICES | JUSTICE JOSEPH GORDON DELIVERED THE OPINION OF THE COURT:<br><br><u>  Cahill, P.J., and R.E. Gordon, J.  </u>, concur. |
| APPEAL from the Circuit Court of Cook County; the Hon___ Judge Presiding. | Lower Court and Trial Judge(s) in form indicated in margin:<br><br>Appeal from the Circuit Court of Cook County.<br><br>The Hon. <u>  Barbara A. McDonald,  </u> Judge Presiding. |
| <br><br><br><br>APPELLANTS:<br>John Doe, of Chicago | Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel.  Indicate the word NONE if not represented.<br><br><u>APPELLANT: Lawrence Seiwert, 33 N. LaSalle Street, Suite 3400, Chicago, IL 60602</u> |
| For APPELLEES, Smith and Smith of Chicago | <u>APPELLEES (Roger Rubin): Mark P. Standa, P.C., 582 N. Oakwood Ave., Suite 201, Lake Forest, IL 60045</u><br><br><u>APPELLEES (Beermann, Swerdlove, Woloshin, Barezky, Becker, Genin & London): Stephen R. Swofford, Joshua G. Vincent, and Kimberly A. Jansen, Hinshaw & Culbertson LLP, 222 North LaSalle St., Suite 300, Chicago, Illinois 60601</u> |

| Add attorneys for 3rd party appellants and/or appellees. | |
|---|---|
| | |