# Illinois Official Reports

## Appellate Court

---

### *Partners for Payment Relief DE IV, LLC v. Daily*, 2019 IL App (3d) 170757

---

| | |
|---|---|
| Appellate Court Caption | PARTNERS FOR PAYMENT RELIEF DE IV, LLC, Plaintiff, v. JOHN DAILY, UNKNOWN OWNERS and NONRECORD CLAIMANTS, Defendants (John Daily, Third-Party Plaintiff-Appellant, v. Barash & Everett, LLC, and Clinton A. Block, Third-Party Defendants-Appellees). |
| District & No. | Third District<br>Docket No. 3-17-0757 |
| Filed | April 10, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Bureau County, No. 16-CH-73; the Hon. Cornelius J. Hollerich, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part.<br>Cause remanded. |
| Counsel on Appeal | Jacob J. Frost, of Spring Valley, for appellant.<br><br>Craig L. Unrath and Rex K. Linder, of Heyl, Royster, Voelker & Allen, P.C., of Peoria, for appellees. |

| Panel | JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Justices McDade and Wright concurred in the judgment and opinion. |

**OPINION**

¶ 1 The defendant and third-party plaintiff, John Daily, appealed the dismissal with prejudice of his third-party complaint against the third-party defendants, Barash & Everett, LLC (Barash), and Clinton A. Block, his former attorneys, for implied indemnity.

¶ 2 FACTS

¶ 3 On November 21, 2016, the plaintiff, Partners for Payment Relief DE IV, LLC (Payment Relief), an assignee of the mortgagee, filed a complaint to foreclose a mortgage against Daily, alleging that Daily, the mortgagor, had not paid on the mortgage since June 2006. The mortgage was a second mortgage, entered into on May 24, 2004, for a principal sum of $31,677.

¶ 4 On February 24, 2017, Daily filed a third-party complaint for implied indemnity against the third-party defendants, Barash and Block, alleging that Daily had been advised by the third-party defendants that the second mortgage was stripped off or avoided in Daily's Chapter 13 bankruptcy proceedings. Daily alleged that the third-party defendants had been retained as his attorneys in his bankruptcy proceedings that commenced in June 2006. The third-party complaint alleged breach of contract, breach of fiduciary duty, and professional negligence in that the third-party defendants failed to timely seek a discharge of the subject mortgage and failed to provide Daily with competent legal advice.

¶ 5 The third-party defendants filed a motion to dismiss the third-party complaint pursuant to section 619(a)(5) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(5) (West 2016)), contending that the complaint was untimely under the statutes of limitations and repose contained in section 13-214.3(b) and (c) of the Code (*id.* § 13-214.3(b), (c)). The motion to dismiss alleged that Block filed a Chapter 13 voluntary petition in bankruptcy on behalf of Daily on June 22, 2006. On March 16, 2010, Justin Raver, the managing partner of Barash, substituted as attorney of record in the bankruptcy proceedings and, on June 23, 2011, filed a motion to modify or amend the plan to correct the treatment of the second mortgage, but that motion was denied on July 26, 2011. The motion to modify acknowledged that there had been a significant mistake in the Chapter 13 plan regarding the treatment of the second mortgage. The bankruptcy case was closed on November 21, 2011. The motion to dismiss further alleged that Daily was aware as early as 2010 that the second mortgage had not been stripped off in the bankruptcy case. Further, the motion to dismiss alleged that neither Block nor Barash had performed any legal work for Daily in connection with the bankruptcy since 2010 and had not received fees for services related thereto since 2006.

¶ 6 In response to the motion to dismiss, Daily referenced and attached several e-mails between himself and employees of Barash after 2006 regarding the second mortgage. The e-mail dated February 28, 2013, from attorney Raver at Barash, told Daily to "Keep me advised as to current events." An e-mail dated December 6, 2013, stated: "Justin Raver reviewed your e-mail. He says this is the first step in a foreclosure process. If you are served

with a foreclosure summons let us know right away." Another e-mail from an employee of Barash on December 21, 2015, contained the subject line "Bankruptcy" and informed Daily that Payment Relief wanted to negotiate a settlement regarding Daily's second mortgage. Thereafter, in a letter dated February 2, 2016, Barash confirmed that it was not representing Daily in relation to the collection efforts by the second mortgage holder and urged Daily to contact another lawyer if he wished to discuss his rights in the matter. As noted above, the complaint to foreclose the second mortgage was filed on November 21, 2016.

¶ 7    The trial court granted the third-party defendants' motion to dismiss with prejudice, finding that the claim against the third-party defendants was barred by both the statute of limitations and the statute of repose (*id.*). The trial court found that, pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), there was no just reason for delaying enforcement or appeal, and Daily appealed.

¶ 8                                        ANALYSIS

¶ 9    Daily argues that when a complaint for legal malpractice is brought in an indemnity action, the limitations period for commencing the action is governed by the limitations period contained in section 13-204 of the Code (735 ILCS 5/13-204 (West 2016)), rather than section 13-214.3(c) of the Code (*id.* § 13-214.3(c)). The third-party defendants allege that section 13-214.3 of the Code is the more specific statute to legal malpractice claims and should be applied over the more general contribution statute. We review *de novo* a dismissal under section 2-619 of the Code. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 368 (2003).

¶ 10    The primary objective of the court in construing the meaning of a statute is to ascertain and give effect to the intent of the legislature. *Southern Illinoisan v. Illinois Department of Public Health*, 218 Ill. 2d 390, 415 (2006). The plain language of the statute is usually the most reliable indication of legislative intent. *Id.* Section 13-214.3(b) of the Code states:

> "An action for damages based on tort, contract, or otherwise (i) against an attorney arising out of an act or omission in the performance of professional services or (ii) against a non-attorney employee arising out of an act or omission in the course of his or her employment by an attorney to assist the attorney in performing professional services must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought." 735 ILCS 5/13-214.3(b) (West 2016).

¶ 11    The Illinois Supreme Court has stated that section 13-214.3 of the Code unambiguously applies to all claims brought against an attorney arising out of actions or omissions in the performance of professional services. *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 23 ("The 'arising out of' language indicates an intent by the legislature that the statute apply to all claims against attorneys concerning their provision of professional services."); see also *Landreth v. Raymond P. Fabricius, P.C.*, 2018 IL App (3d) 150760, ¶ 31 (section 13-214.3 of the Code is not applicable to claims that do not arise out of provision of legal services but rather seeks to hold partner liable derivatively based upon his status as a partner). Pursuant to the express language of section 13-214.3 of the Code, it is the nature of the act or omission, rather than the identity of the plaintiff, that determines whether the statute applies to a claim brought against an attorney. *Riseborough*, 2014 IL 114271, ¶ 19.

¶ 12    In this case, the claims against the third-party defendants, while stated as an implied indemnity action, are all claims against attorneys arising out of actions or omissions in the performance of professional services. Thus, section 13-214.3 of the Code governs the action, rather than the general contribution and indemnity statute, section 13-204 of the Code.

¶ 13    The two-year statute of limitations contained in section 13-214.3(b) (735 ILCS 5/13-214.3(b) (West 2016)) begins to run after a cause of action has accrued, while the statute of repose contained in section 13-214.3(c) of the Code begins to run as soon as an event creating the malpractice occurs, regardless of whether any injury has yet resulted so as to cause an action to accrue. *Mauer v. Rubin*, 401 Ill. App. 3d 630, 639 (2010); 735 ILCS 5/13-214.3(c) (West 2016). A statute of repose begins to run when a specific event occurs, regardless of whether an action has accrued and extinguishes liability after a fixed period of time. *Snyder v. Heidelberger*, 2011 IL 111052, ¶ 10. "The period of repose in a legal malpractice case begins to run on the last date on which the attorney performs the work involved in the alleged negligence." *Id.* ¶ 18.

¶ 14    The third-party defendants argue that Block's work occurred in 2006, so the statute of repose expired in 2012. Daily's complaint alleges that he retained Block to pursue bankruptcy relief in 2006. Daily alleges that he was advised that the second mortgage at issue here would be discharged in the bankruptcy proceedings. Based on the allegations in the complaint, the trial court was correct to dismiss Daily's third-party complaint. However, a dismissal with prejudice, with no opportunity to amend, was in error. The briefs filed in opposition to the motion to dismiss in the trial court indicate that the third party defendants filed a motion to amend Daily's bankruptcy plan on June 23, 2011, which was denied on July 26, 2011. The third party defendants also continued e-mailing Daily regarding the case through late 2015, finally informing Daily that it did not represent him in relation to the collection efforts by the second mortgage holder on February 2, 2016. It is arguable that the malpractice continued until 2016 and compounded the damage done by the admitted malpractice in the bankruptcy proceedings, so Daily should be allowed to amend his complaint. But see *Rubin*, 401 Ill. App. 3d at 645 (activity on the part of the attorneys after defective agreement was entered did not compound the damage caused by the final judgment).

¶ 15    Daily argues that he also has a meritorious equitable estoppel claim against the third-party defendants. Daily contends that the continued e-mails with the third-party defendants lulled him into a sense of security and he relied on their indications that they would protect and defend him.

¶ 16    A party claiming estoppel must demonstrate that (1) the other person misrepresented or concealed material facts; (2) the other person knew at the time he or she made the representations that they were untrue; (3) the party claiming estoppel did not know that the representations were untrue when they were made and when that party decided to act, or not, upon the representations; (4) the other person intended or reasonably expected that the party claiming estoppel would determine whether to act, or not, based upon the representations; (5) the party claiming estoppel reasonably relied upon the representations in good faith to his or her detriment; and (6) the party claiming estoppel would be prejudiced by his or her reliance on the representations if the other person is permitted to deny the truth thereof. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 82-83 (2006).

¶ 17    The Illinois Supreme Court applied equitable estoppel in the context of a statute of limitations in *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240, 252 (1994), and found that the attorneys' constant reassurance of the client's legal status lulled him into a false sense of security. Thus, Daily should be allowed to amend his complaint to include the estoppel allegations.

¶ 18                                                    CONCLUSION

¶ 19    The judgment of the circuit court of Bureau County is affirmed in part in that the dismissal of the third-party complaint is upheld but the fact that the dismissal was with prejudice is reversed and the matter is remanded to allow the third-party plaintiff to file an amended third-party complaint.

¶ 20    Affirmed in part and reversed in part.

¶ 21    Cause remanded.